J. M. BARRY v. THE FARMERS' MUTUAL HAIL INSURANCE ASSOCIATION OF IOWA, Appellant.

**Hail Insurance:** ACCOUNT OF LOSS: *Sufficiency.* The requirement of a policy of insurance against loss to growing corn by hail, that in case of partial loss, a true account of the remaining portion shall be kept, is sufficiently complied with, where only the part of the tract has been harvested at the time it is desirable to know the amount, by averaging the remainder with that already gathered.

**CARE OF INJURED PART OF CROP.** Under a contract of insurance against injury to growing crops, requiring the loss to be estimated in bushels at the market value, the recovery is the market value of that destroyed, less what it would have cost to prepare it for the market, though assured is required to take care of the remainder of the crop.

**DIRECTING VERDICT.** The recovery under a policy insuring growing crops against loss by hail, being the market value of that destroyed, less the expense of preparing it for market, a verdict should be directed for the insurer, assured having given no evidence of such expense.

**Evidence:** DAMAGE BY HAIL. Where the loss under a policy of insurance against injury to growing crops by hail is to be considered the difference between the amount grown on the damaged

tract and a fair average crop grown on an equal, uninjured tract, in the immediate neighborhood; evidence of the yield on lands in the neighborhood is admissible, though it does not appear that the tracts are of the same size, or yielding capacity, or cultivated with the same care, this going only to the weight of the testimony.

ADMISSIBILITY.   It being in issue whether plaintiff's grain was injured by hail, testimony of R., who had grain in a field cornering on plaintiff's, as to whether he saw any evidence of hail in his grain on the day plaintiff claimed his crop was injured, is admissible.

COMPETENCY.   An adjuster of a company insuring against loss to growing grain from hail, who has examined plaintiff's crop, may testify from his experience, whether it had been injured by hail; the question calling for a fact as to which he had knowledge, and of which he was competent to testify.

*Appeal from Wright District Court.*—HON. B. P. BIRDSALL, Judge.

TUESDAY, JANUARY 30, 1900.

ACTION to recover upon a policy of insurance against loss or damage to certain growing crops by hail. Plaintiff alleges that on the third day of July, 1897, said crops were damaged by hail to the extent of one thousand three hundred dollars; that he was then the owner thereof; that he gave defendant notice in writing of the loss, "and, when said damaged crops were harvested, plaintiff gave the defendant a true account of the grain, hay, and seed grown upon the land covered by said policy of insurance; said statement being certified by two disinterested witnesses, and the same being under oath, as required by the terms of said policy." Plaintiff asks judgment for the full amount of the policy, namely, one thousand two hundred dollars. The defendant answered, admitting that it issued to the plaintiff the policy set out, admitting that plaintiff gave notice of the losses, and admitting "that plaintiff gave the defendant a statement purporting to show an account of the amount of grain, seed, and hay harvested upon the land covered by the policy of insurance, and certified by two witnesses; but as to the correctness of such statement this defendant has neither knowledge, nor information sufficient to form a belief, and therefore denies.

the same." The defendant denies that plaintiff sustained damage in any sum, and denies that he has in all respects complied with the provision of said policy, and, further answering, alleges in substance as follows: That plaintiff refused to arbitrate, and failed to care for the grain as provided for in defendant's by-laws, which were a part of the policy, wherefore defendant asks judgment for costs. Plaintiff replies, denying that he refused to arbitrate or that he failed to care for the grain; and, upon trial had upon these issues, verdict and judgment were rendered in favor of the plaintiff for five hundred dollars, from which the defendant appeals.—*Reversed.*

*Thos. A. Cheshire* for appellant.

*Ladd & Rogers* for appellee.

GIVEN, J.—I. The by-laws, which are a part of the contract, contain the following: "Sec. 10. When there is only partial loss, the assured shall proceed to care for the remaining portion to the best of his ability, or as he and the association's representative shall agree; and, shall he neglect or refuse to do so, the association shall not be liable for the loss caused by such neglect. And, when such damaged crops shall be harvested, a true account of the grain, hay, and seed grown upon the land covered by insurance in this association shall be kept and delivered to the association, certified to by two disinterested witnesses." Appellant contends that, as to the corn covered by the policy, the plaintiff did not comply with these requirements, for that he did not care for it; that the statement rendered of the grain gathered was made before it was all gathered, and was not a true account thereof. There was no issue in the pleadings as to the time the statement of the amount of grain harvested was made. Plaintiff alleged that he made it "when said damaged crop was harvested," and defendant admitted in its answer "that plaintiff gave the defendant a statement purporting to show an account of the amount of grain, seed,

and hay harvested." It is true that, owing to an early fall of snow and continued cold weather, part of the corn was not gathered until in February, 1898, and that the statement was made to defendant January 10, 1898; but no complaint is made in the pleadings as to the time of the giving of this statement. As to the care of the grain and the correctness of the statement, the facts are that, for the reason already stated, part of the corn was not harvested until in February, 1898, and that in making the statement of the amount the yield of this part was arrived at by counting the rows and the acreage, and averaging it with that which had been already gathered. While this is not as accurate as measuring or weighing, it is a means often resorted to, and accepted as sufficiently reliable, especially when, as in this case, it was desirable to know the amount in advance of the time at which the yield could be actually weighed or measured. Section 8 of said by-laws provides that "all adjustments shall be made and all losses settled on or before the 20th day of December of same year." For reasons that appear, neither of these parties stood upon the letter of the law as to the time of rendering the statement; and, while the statement made did not give the exact amount of the grain, it was so substantially correct as to constitute a compliance with the by-laws in that respect. As to the care of the grain, the jury was warranted in finding that there was no neglect or refusal on the part of the plaintiff to take care of the grain, but that the delay was forced by the condition of the weather. It is insisted that there was no evidence worthy of credence which shows what the field of corn actually yielded, but we think otherwise. There is the testimony of two witnesses who helped to gather the corn, and who estimated that which was not gathered until February, upon which the jury was warranted in finding the amount that was harvested. The plaintiff testified that he picked one thousand bushels from the sixty-five acres of grain, and, upon its being discovered that all he knew about it was what was told him by

the man who picked the corn, defendant moved to strike out his testimony as to the amount. The court erred in overruling this motion, but, in view of the testimony of the other two witnesses, we think the defendant was not prejudiced by the ruling.

II.   Said by-laws provide that, "in case of disagreement as to the amount of the loss, it shall be settled by arbitration as follows." Considerable evidence was taken as to the attempt at arbitration between these parties to follow immediately upon the arbitration of the claim of one Quigley for a loss sustained at the same time under a like policy. While the record is somewhat obscure, we think it shows that on motion of the plaintiff all the evidence as to the attempts to arbitrate was withdrawn, and the question as to arbitration taken out of the case. If it were otherwise, we think the defendant had no ground of complaint because the matter was not submitted to arbitration.

III.   In section 9 of the by-laws it is provided, "The loss in all cases shall be considered the difference between the amount grown on the damaged tract, and a fair average of the same kind grown on an equal tract in the immediate neighborhood, where no damage was sustained." A number of witnesses were permitted to testify, over defendant's objection, as to the yield of like crops on lands cultivated by them that year in the neighborhood. Defendant claims that this was error, because it did not appear that the tracts were approximately of the same size or yielding capacity, nor that they were cultivated with the same care. These considerations went to the weight of the testimony, but we think there was no error in admitting this class of evidence. The defendant called one Reeves, who had grain in a field cornering with that of the plaintiff, and who testified to plowing it three or four days after July 3d. He was asked if he saw any evidence of any hail on the 3d of July in his grain, to which plaintiff's

objection was sustained on the ground of incompetency. It was in issue as to whether plaintiff's grain had been injured by hail, and this evidence had a very direct bearing upon that issue, and should have been admitted. Defendant called R. J. Young, one of its adjusters, who had examined plaintiff's crop; and he was asked to say, from his experience, whether plaintiff's oats had been damaged by hail. This was objected to, and the objection sustained. We think the question called for a fact as to which the witness had knowledge, and of which he was competent to testify. The objection should have been overruled.

IV. The court instructed: "The measure of his damages will be the difference between the amount grown on the damaged tract, and a fair average of the same kind grown on an equal tract in the immediate neighborhood, as shown by the evidence. Under this rule you will determine from the evidence the quantity, in acres, of each kind of crop upon each tract described in the policy that was damaged by hail, and the amount of the crop that was actually grown thereon. Then determine from the evidence the fair average of the same kind of crop grown on an equal number of acres in the neighborhood of plaintiff's land, and the difference will constitute the loss on each particular tract. Having determined in this manner the quantity of loss sustained, you will then determine from the evidence the fair and reasonable market value thereof at the time the several crops were harvested, and the amount thus ascertained will constitute the plaintiff's recovery in this case." It will be noticed that the measure of damages is stated in almost the identical language of section 9 of the by-laws. By making that by-law a part of their contract, the parties agreed that by that measure the loss should be determined. It is not provided how the loss shall be valued,—whether in the field, by the acre, or by the bushel. The case seems to have been tried upon the theory that the amount of the loss was to be esti-

mated in bushels, and at the market value. Appellant's contentions are that there is no evidence of what the market value was, nor of the cost of preparing the grain for market, and that the court erred in not instructing that such cost should be deducted from the market value of the lost grain. The parties have construed their contract as requiring the loss to be estimated in bushels and at the market value, we accept that construction. Appellant cites *Smith v. Railroad Co.*, 38 Iowa, 519,—an action for damages caused to growing crops in consequence of a failure to construct cattle guards. It was held that the measure of recovery was the market value of the crops when matured, less the expense of fitting them for market from the time of the injury. Appellant contends that under this authority the court erred in not instructing that the expense of fitting the crops for market should be deducted from the market value. Appellee insists that as, under the contract, he was bound to take care of the crop until matured, the expense of doing so should not be deducted. In both cases the loss occurred when the damage was done. Though *Smith's Case* was in tort, he was bound to exercise care to avoid unnecessary damage. If the destruction of his crop was only partial, the law required him to care for what remained, and would not compensate for its loss through his neglect. This is what is required of appellee by the contract, and therefore the same rule applies. Surely the parties did not contemplate that in case of loss the plaintiff should receive greater damage than he sustained, yet under the instruction he gets the full market value of that part of the crop that was lost, without incurring the expense of fitting it for market. It may be said that, as there was no evidence of the expense of preparing the crops for market, the court properly omitted to instruct on that subject. There is no evidence whatever as to that expense. Therefore we think the court erred in not sustaining the defendant's motion for a verdict.

Other matters discussed are not likely to arise on a retrial, and therefore do not require consideration. For the errors stated, the judgment is REVERSED.

GRANGER, C. J., not sitting.