JAY HANSELL, Appellee, v. FARMERS MUTUAL HAIL INSURANCE ASSOCIATION OF IOWA, Appellant.

No. 39977.

DECEMBER 13, 1929.

*Hal W. Byers* and *C. W. Garfield,* for appellant.

*Lovrien & Lovrien* and *T. S. Herrick,* for appellee.

ALBERT, C. J.—I. On the 22d day of August, 1927, and during the life of the policy, a hailstorm damaged certain growing crops on the land of the plaintiff, and such damage is the

 basis of this action. The defendant, by way of answer, admits the execution of the policy to the plaintiff; admits that, on August 22, 1927, the plaintiff "suffered some damage to his crops by hail;" admits that an attempted adjustment was made, but that the parties were unable to agree on a settlement.

On September 3, 1927, a written arbitration agreement was signed between the plaintiff and the defendant, by which one Senneff was named as arbitrator in behalf of the defendant, and one Ericksen for the plaintiff, and it was agreed that these two arbitrators should choose a third. Among other things, they were to determine what part of said crop had been damaged by hail, and when such award was signed by all the arbitrators, the settlement would be final and binding on both parties. These arbitrators met, and after spending two days' time, signed a writing (on September 10, 1927), reciting that they were unable to agree. The defendant then proposed to select new arbitrators, which proposition was rejected by the plaintiff; and on December 17th, plaintiff filed his petition in the present action, suing for loss under the aforesaid policy. The record does not show when the original notice in this action was served on the defendant; but on December 22, 1927, the defendant appeared, by filing a demurrer.

The first claim made by the defendant is that, under the by-laws, this action was prematurely brought. Section 7 of the by-laws, among other things, provides that the insured who suffers loss shall give notice thereof within ten days; that, on receipt of the notice, the secretary shall send a person duly authorized by the association, who shall proceed to adjust the loss, "and in case of disagreement either as to whether there is any loss at all or as to the amount of the loss it may by mutual consent be settled by arbitration as follows." It then provides for each party to select an arbitrator, and the two thus chosen to select a third, and "an award signed by all the arbitrators shall be final and binding upon both parties. * * * The loss in no case shall be payable until 30 days after the award of the arbitrators herein required shall have been rendered."

It is the claim of the defendant that, since plaintiff entered into this arbitration, under said Section 7 of the by-laws, action

could not be maintained until 30 days after the award of the arbitrators had been rendered, and that, as no such award had been rendered by the arbitrators, the plaintiff's action should abate.

There are many cases in this state and other states holding that, where there is a provision in a policy that, if the company and the insured cannot agree, the matter shall or must be submitted to a board of arbitrators, and that no action can be maintained thereon until a specified time has elapsed, compliance with such provision is a condition precedent to the bringing of an action, and a failure to carry out this provision of the policy or by-laws will defeat the action. A reading of these cases, however, shows that in each instance the arbitration was compulsory, under the terms of the contract, while, in the case under consideration, no such provision is contained in the policy or by-laws. The most that can be claimed under By-law No. 7 above specified is that there may be an arbitration, by mutual consent of the parties; but it is nowhere provided that said arbitration shall be compulsory. In this case there was a mutual consent to an arbitration, and a writing executed for that purpose; but the arbitrators could not agree, and so reported to the parties. Were this a compulsory arbitration, we have settled the rule that, where the arbitrators cannot agree, the parties must proceed to the selection of other arbitrators, to the end that an award may be agreed upon and the basis for action determined. See *Westenhaver Bros. v. German Am. Ins. Co.*, 113 Iowa 726, l. c. 733, where we said:

"Following this rule, it was plaintiff's duty, when the appraisers first selected failed to agree, through no fault of either of the parties, to select a new appraiser, in order that the amount of their recovery should be fixed. They could not arbitrarily proceed to set aside the agreement for arbitration and sue for the amount of loss; for the defendant agreed to pay the amount found due by the appraisers, and in the absence of fraud, bad faith, or culpable neglect, or other conduct amounting to a refusal to proceed with arbitration, the defendant had the right to stand on its contract rights."

Outside of Iowa, the states where the arbitration is compulsory are badly divided on this question. California, Indiana,

Massachusetts, Michigan, Missouri, New Jersey, Pennsylvania, and Rhode Island hold to the doctrine set out in our *Westenhaver Bros.* case; while Alabama, Illinois, Maryland, Mississippi, North Carolina, Tennessee, Texas, and Connecticut hold that, where the arbitrators disagree, plaintiff may then bring action. These, however, are all cases in which the arbitration is made a condition precedent, by the policy or by-laws. As above suggested, the arbitration is not compulsory, under the terms of the policy before us, but at most is merely permissive, when both parties consent thereto; hence the rule stated in the *Westenhaver Bros.* case is not necessarily controlling in the situation we have before us. As stated, when the arbitrators made their return that they could not agree, the plaintiff refused to act further under the agreement, and later brought his action on the policy. Just what were the rights of the plaintiff at this point?

In the case of *Dee & Sons Co. v. Key City Fire Ins. Co.,* 104 Iowa 167, at 170, we said:

"Now, the rule which governs such stipulations is stated in *Hamilton v. Insurance Co.,* 137 U. S. 370 (11 Sup. Ct. Rep. 133), in the following language: 'A provision in a contract for the payment of money upon a contingency that the amount to be paid shall be submitted to arbitrators, whose award shall be final as to that amount, but shall not determine the general question of liability, is undoubtedly valid. If the contract further provides that no action on it shall be maintained until after such award, then * * * the award is a condition precedent to the right of action. But when no such condition is expressed in the contract, or necessarily to be implied from its terms, it is equally well settled that the agreement for submitting the amount to arbitration is collateral and independent, and that a breach of this agreement, while it will support a separate action, cannot be pleaded in bar to an action on the principal contract.' This rule has been cited with approval by this court. *Lesure Lbr. Co. v. Mutual Fire Ins. Co.,* 101 Iowa 514; *Zalesky v. Home Ins. Co.,* 102 Iowa 613; *Read & Traversy v. State Ins. Co.,* 103 Iowa 307."

It is apparent under this rule that this agreement for submitting the loss to arbitration was wholly collateral and indepen-

dent, and the refusal of the plaintiff to pursue the arbitration, after the arbitrators disagreed, amounted simply to a breach of his contract of arbitration, which might subject him to damages in an action brought therefor, but is not a bar to the present action, based on the policy of insurance. See 5 Corpus Juris 61, Sections 121 and 122. The fact, therefore, that plaintiff entered into this arbitration, and, before any award was actually made therein, revoked his consent thereto, cannot operate to put into force the 30-day limitation provided for in By-law No. 7, above quoted; hence cannot be made the basis of an abatement herein. In point, see *Barry v. Farmers' Mut. Hail Ins. Assn.*, 110 Iowa 433.

II. It is further contended that the action should be abated because, under the provisions of the contract and the statute, it is prematurely brought. The code section in controversy, 9048, Code, 1924, reads as follows:

"No action on any loss shall be begun until the date when such loss becomes due in accordance with the articles of incorporation or by-laws of such association * * *."

The following Iowa cases hold that, if this section of the statute is violated, the action cannot be maintained: *Vore v. Hawkeye Ins. Co.*, 76 Iowa 548; *Taylor v. Merchants & Bankers'*  *Ins. Co.*, 83 Iowa 402; *Wilhelmi v. Des Moines Ins. Co.*, 86 Iowa 326; *Worley v. State Ins. Co.*, 91 Iowa 150; *Blood v. Hawkeye Ins. Co.*, 103 Iowa 728; *Salmon v. Farm Property Mut. Ins. Assn.*, 168 Iowa 521.

There is no provision whatever in the articles of incorporation or by-laws specifically naming a date when a loss is due, unless it be the following, found in one of the by-laws of the Association: "All adjustments shall be made and all losses settled on or before the 20th day of January of the succeeding year." Appellant insists that this provision of the by-law is intended to indicate the due date of the losses. With this we do not agree. It was evident that, when this provision was written into the by-laws, it had to do with the internal workings of the company, and it was not intended as a provision fixing the due date of losses. This being true, and there being no specific date provided as a due date for the loss, plaintiff

had a right to bring his action at any time after the loss occurred. Hence this action was not prematurely brought.

III. Appellant next insists that a compromise offer and the amount thereof are not admissible in evidence, under the cases of *Langdon v. Ahrends,* 166 Iowa 636; *Spaulding v. Laybourn,* 164 Iowa 277; and other Iowa cases. We  readily concede the rule stated in this line of cases, but find that it has no application to the case before us, because there is no showing in the abstract that any such compromise offer was offered in evidence. The fact that the parties signed an arbitration agreement does not come within the rule above referred to.

IV. A certain exhibit was admitted in evidence, being a statement filed by the plaintiff with the appellant association in an attempt to comply with Section 8 of the by-laws, which  requires that, in case of partial loss, when the parties cannot agree, ''when such damaged crops shall be harvested, a true account of the amount of the grain, hay and seed grown upon the land covered by the insurance * * * shall be kept and delivered to the association at its offices in Des Moines on or before the 15th day of December, of the same year, subscribed and sworn to by two disinterested witnesses.'' Without setting out the statement, it is sufficient to say that it is made by two disinterested witnesses, sworn to by them, and describes the land in controversy, the acreage in corn, and the number of bushels of corn grown upon said ground during the crop season of 1927. We think this is a sufficient compliance with the requirements of the by-law.

It is further insisted that, under the above-quoted part of Section 8 of the by-laws, a true account shall be kept and delivered, and it is insisted that this was not done by the plaintiff herein. We interpreted this clause in *Barry v. Farmers' Mut. Hail Ins. Assn.,* supra, and there held that, so far as this clause is concerned:

''* * * in making the statement of the amount, the yield of this part was arrived at by counting the rows and the acreage, and averaging it with that which had been already gathered. While this is not as accurate as measuring or weighing, it is a

means often resorted to, and accepted as sufficiently reliable, especially when, as in this case, it was desirable to know the amount in advance of the time at which the yield could be actually weighed or measured. * * * and, while the statement made did not give the exact amount of the grain, it was so substantially correct as to constitute a compliance with the by-laws in that respect.''

Under the evidence in the case at bar, the yield on the land in controversy was estimated by picking 5 rows out of 50, which were used as a basis for the witness's opinion that the corn ''would go about 15 bushels to the acre.'' We think this is sufficient to take this question to the jury. (In the case at bar, the plaintiff sold none of this corn, but fed it on the farm.)

Other questions are discussed which we have considered with care, but find nothing which would constitute reversible error.—*Affirmed.*

STEVENS, DE GRAFF, MORLING, and WAGNER, JJ., concur.