[S. F. No. 4970.  Department One.—April 30, 1909.]

## WHITNEY ESTATE COMPANY (a Corporation), Appellant, v. NORTHERN ASSURANCE COMPANY OF LONDON (a Corporation), Respondent.

INSURANCE—NATURE OF POLICY—INDEMNITY—ACTUAL LOSS.—A policy of insurance is a contract of indemnity against loss; and the insured is entitled to recover under the policy such loss as he has actually sustained, not exceeding the sum stipulated.

ID.—FIRE INSURANCE—LOSS OF RENTS—COMPUTATION—GROSS RENTS.— Under a policy of fire insurance indemnifying the owner of a building in a specified sum on the rents thereof, providing that if it be rendered untenantable by fire, the insurance company shall be liable to the assured for the actual loss of rent ensuing therefrom, based upon the rentals in force from the rented portions at the time of the fire, not exceeding the sum insured, to be computed from the date of the fire for the time it would require to put the premises into a tenantable condition, the assured is entitled to receive the gross loss of rents by reason of the fire, without any deduction for supposed expenses of collecting the same. ·

ID.—UNCERTAINTIES AS TO NET LOSS—AGREEMENT FOR GROSS LOSS— ABSENCE OF PROVISION FOR DEDUCTION.—*Held,* in view of the uncertainties in attempting to compute the net loss, and of the absence of any provision in the policy for any deduction from the gross rents, the policy fairly construed shows a competent agreement of the parties to compensate the gross loss of rents occasioned as the result of the fire.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

L. A. Redman, for Appellant.

Goodfellow & Eells, for Respondent.

SLOSS, J.—This is an action on a policy of fire insurance. The facts are undisputed, such of them as were put in issue by the pleadings having been found by the court upon the agreement of the parties.

The defendant, in June, 1905, issued to plaintiff a policy containing the following provisions bearing upon the question in dispute:

"Northern Assurance Company of London,

"In consideration of the stipulations herein named and of sixty-six 20-100 dollars premium does insure the Whitney Estate Company for the term of one year from the 1st day of June, 1905, at noon, to the 1st day of June, 1906, at noon, against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding fifteen thousand four hundred no-100 dollars, to the following described property while located and contained as described herein, and not elsewhere, to wit:

"15,400. On rents of the brick building known as the Starr King building, situate No. 117 to 125 on the south side of Geary Street, between Grant Avenue and Stockton Street, San Francisco, California. . . ."

"It is understood and agreed that in case the above-named building or any part thereof shall be rendered untenantable by fire, this company shall be liable to the assured for the actual loss of rent ensuing therefrom, based upon the rentals in force from the rented portions of the premises at the time of fire, not exceeding the sum insured. Loss to be computed from the date of the fire for the time it would require to put the premises in tenantable condition, excluding from such time such portion thereof as may be consumed by a strike or by any other delay beyond the control of the assured.

"In the event of disagreement as to the time required to put the premises in tenantable condition, the same shall be ascertained by two competent and disinterested appraisers, . . . etc.

"The assured stipulates and agrees to carry insurance on said rents in an amount equal to the annual rents of said premises, and it is understood and agreed that if at the time of fire, the aggregate amount of insurance shall be less than the annual rentals at the time of the fire, the assured shall be held to be an insurer in the amount of such deficiency, and in that capacity shall bear a proportionate share of the loss."

All of the foregoing, except the first paragraph quoted, is contained in a slip or "rider" attached to a policy in the form usually employed for fire insurance. One of the clauses

found in the body of the policy, and relied on by respondent, declares that "wherever in this policy . . . the word 'loss' occurs, it shall be deemed the equivalent of 'loss or damage.' " Many of the other provisions common to such usual or "standard" form are in their nature inapplicable to the subject-matter of this particular contract.

On April 18, 1906, the Starr King building was owned by the plaintiff, and on that day it was totally destroyed by fire. At the time of the fire of April, 1906, the total amount of insurance on rents carried by plaintiff, including and concurrent with that of the defendant, was $69,175.00, and the total amount of rents being collected by plaintiff from tenants occupying the rented portions of the building was a sum which if paid for one year would aggregate $68,298.00. For such rents the plaintiff was required to and did furnish to its tenants certain services, including the operation of an elevator, the supply of water and light, and the services of a janitor. The cost to the plaintiff of such service, if paid for one year, would aggregate ten thousand dollars. The time required to put the building in tenantable condition was agreed upon by the parties to be twelve and one half months.

The position of the plaintiff was that, on these facts, it was entitled to recover from the insurers the gross amount of the rents for one year,—viz. $68,298.00. The defendant contended, however, that the loss or damage sustained by plaintiff and recoverable by it was only the sum remaining after deducting from the gross annual rentals the ten thousand dollars which, if there had been no fire, plaintiff would have been obliged to expend in furnishing the aforesaid services to tenants. The latter view was accepted by the trial court, which, after finding, as a conclusion of law, that plaintiff's loss or damage was $58,298.00, awarded judgment for $12,964.47, the proportion of such loss payable by defendant. From this judgment plaintiff appeals.

The question thus presented is, so far as we are able to learn, a novel one. Rent insurance is a comparatively recent development of underwriting, and cases dealing with its peculiar problems are few. In their briefs the learned counsel for the respective parties present various authorities, but none of the cases cited on either side can be said to be closely in point. They are valuable in so far as they illustrate general

principles of insurance law which must be looked to for the determination of the question before us. One of these principles—and the one upon which the respondent bases its position—is that a policy of insurance is a contract of indemnity. It is, as defined in section 2527 of the Civil Code, "a contract whereby one undertakes to indemnify another against loss, damage, or liability, arising from an unknown or contingent event." Section 2551 provides that "the sole object of insurance is the indemnity of the insured . . ." Policies "executed by way of gaming or wagering" are void. (Civ. Code, sec. 2558.) "The measure of an insurable interest in property is the extent to which the insured might be damnified by loss or injury thereof." (Civ. Code, sec. 2550.) Accordingly, it is universally held that (except in case of a valued policy) "the insured is entitled to recover under the policy only such loss as he has actually sustained, not exceeding the sum stipulated." (16 Am. and Eng. Ency. of Law, p. 840.)

The contention of the respondent is that the application of these rules requires the affirmance of the judgment. The "loss of rent" suffered by plaintiff was not, it is said, the gross amount of rents which it would have received, but only the surplus remaining after deducting the expense to which it would have been put in collecting such rents. This position would have much force if the subject of insurance consisted of such property that the loss occasioned by a fire could be accurately determined. But, in the case of rents of a building it is not, in the nature of things, possible to determine, at any particular period, just what the income from rents for the ensuing year would be. It may be that a greater or a less part of the building may be occupied during the year than at its commencement. So, with the matter of expense. The annual outlay for elevator service, wages of janitors, light, and water will depend upon a variety of contingencies which cannot be foretold. Furthermore, the fact that a building is rendered untenantable may cause a loss of rents to the owner in ways that are even more incapable of measurement. A building vacated by its tenants in consequence of fire may remain vacant, in whole or in part, long after it has been restored and is again ready for occupancy. In view of all these uncertainties, it is perfectly competent for the parties to a contract of rent insurance, without in any degree violating

the principle that the insurance shall furnish only indemnity against loss, to stipulate for a method of ascertaining and computing such loss. We think the policy before us, fairly construed, does provide that the loss of rents shall be deemed to be the amount of rentals that would be collected by the insured during the period that may be required to restore the building to a tenantable condition, assuming that the rentals would have continued to be the same in amount as at the time of the fire. So construed, the policy, if not strictly a valued policy (Civ. Code, sec. 2596), may be regarded as analogous to a valued policy in so far as it prescribes a method for determining, as between the parties, the amount of loss. The suggested meaning is the one indicated by the clauses of the policy quoted by us. The insurance company agrees to be liable for the "actual loss of rent ensuing" from the fire, and makes provision for the manner of determining the loss. It is to be based upon the rentals in force from the rented portions of the premises at the time of fire and to be "computed from the date of the fire for the time it would require to put the premises in tenantable condition." No elements except those of actual rentals at time of fire and time required for repair are mentioned. The first of these elements is easily ascertainable, and special provision is made for arbitration as to the second, in the event of disagreement. If it had been intended that any other item should enter into the computation, it seems reasonable to suppose that something would have been said regarding such other item. The view suggested is fortified by a consideration of the clause requiring the insured to carry insurance on said rents in an amount equal to the annual rents of the premises, under penalty of being held to be a coinsurer to the extent of the deficiency. If respondent's contention be correct, this clause would require, if the management of the building involved any expense whatever, the carrying of insurance to an amount greater than the loss which could possibly be sustained. It would impose upon the insured the obligation of insuring to the extent of his gross rents, although the liability of the insurers would be limited to the net rents. In this view, the requirement would be unreasonable and burdensome. It is, however, a perfectly proper and legitimate condition if recovery, in the event of fire, is to go to the extent of the total rentals, without any deduction for expenses.

As we have said, no case directly in point has been called to our attention. Perhaps the one that affords the closest analogy to the one before us is *Stevens* v. *Columbian Ins. Co.,* 3 Caines (N. Y.) 43, [2 Am Dec. 247]. There the charterer of a vessel had insured the freight under an open policy. There was a total loss en route, and it was held that the insured was entitled to recover the gross amount named in the policy, without any deduction for expenses of wages and provisions for the crew which would have had to be borne by plaintiff if the vessel had completed her voyage. It is true that there are many distinctions between marine insurance and insurance against loss by fire, and that the rules governing the one cannot always be applied to the other. The doctrine of the Stevens case is, in this state, expressly adopted by statute as the method of estimating the loss of freight under an open marine policy. (Civ. Code, sec. 2471.) But, notwithstanding the differences arising from the nature of marine and fire insurance, each is a contract of indemnity, and much of the reasoning of the court in the case just mentioned has a direct bearing upon the one before us. "Although indemnity is the leading object of insurance, it is not always the criterion by which to ascertain the amount of the loss," says the court, and goes on to point out that "to adopt the net amount of freight as the rule, would lead to much litigation and uncertainty respecting the deductions to be made. But to take the gross amount of freight as the rule of damages, would be equal, simple, and easily ascertained." The last observation has particular force when applied to the facts of the case before us.

The respondent relies on *Lite* v. *Firemen's Ins. Co.,* 119 App. Div. 410, [104 N. Y. Supp. 434]. The policy there involved was one on "the profits of the lease" of certain buildings leased by plaintiff, and by him sublet to various tenants. In the course of the opinion it is said that plaintiff's recovery was to be "measured by the difference between the rentals which he is able to realize from the property, less the rent paid by him, plus the expense of running and maintaining the building." The subject of insurance being the *profits* of the lease, it was obviously necessary, in estimating plaintiff's loss, to deduct from the rents received by him, all expenses incurred. The case is not at all analogous to the present one, where the insurance is on rents. *Barry* v. *Farmers' etc. Ins. Assoc.,* 110

Iowa, 433, [81 N. W. 690], and *McIlrath* v. *Farmers' etc. Ins. Assoc.*, 114 Iowa, 244, [86 N. W. 310], are also cited by respondent. These were cases of insurance on growing crops, which were destroyed before maturity. In each case it was held that plaintiff could recover only the market value of the grain destroyed, after deducting what it would have cost to prepare it for market. This ruling has no bearing on the question before us. The insured was entitled to no more than the value of the property lost at the time of its destruction. The value of a growing crop is not the equivalent of the value which such crop would have at maturity, and the court was simply declaring a method of ascertaining the value of the property at the time of destruction, and the consequent loss. (See *Shoemaker* v. *Acker,* 116 Cal. 239, [48 Pac. 62] ; *Holt Mfg. Co.* v. *Thornton,* 136 Cal. 232, [68 Pac. 708] ; *Teller* v. *Bay and River Dredging Co.,* 151 Cal. 209, [90 Pac. 942].)

Upon a consideration of the entire policy, we think it was intended to make the defendant liable for such amount of rent, at the rate paid for the portions rented at the time of the fire, as would have become payable to plaintiff during the period required to restore the premises to a tenantable condition, without deduction for any expenses connected with the renting.

The judgment is reversed, with instructions to the trial court to enter judgment in accordance with the views herein expressed.

Angellotti, J., and Shaw, J., concurred.

Hearing in Bank denied.