## J. W. UNTON AND ANOTHER v. LIVERPOOL, LONDON & GLOBE INSURANCE COMPANY AND OTHERS.[1]

February 26, 1926.

Nos. 25,137-25,141.

**Statute does not prohibit valued policy of insurance on personal property.**
1.   G. S. 1923, § 3512, does not prohibit the issuance of valued policy of insurance upon personal property in this state.

**And permits insurance of leasehold interest by filling blanks in standard fire policy.**
2.   The statute permits the blanks in a standard fire policy to be filled in by print or writing for insurance against loss of a leasehold interest.

**Typewritten riders valid and construed as fixing value and amounts recoverable.**
3.   The typewritten provisions, in the form of riders placed upon the policies in the instant case, *held* valid and as fixing, by agreement, the value of the property insured and the amount of insurance recoverable in the event of cancelation of the lease by fire.

**Value of property and highest amount of concurrent insurance fixed.**
4.   The provision in the policies that the company shall be liable for its portion of the actual loss of the leasehold interest, at the date of the policy, estimated at $10,000, fixes the value of the property as well as the highest amount of concurrent insurance permissible.

Fire Insurance, 26 C. J. pp. 57 n. 63; 354 n. 9.
Insurance, 32 C. J. p. 1112 n. 29.
Marine Insurance, 38 C. J. pp. 1019 n. 90; 1123 n. 53.

Five actions in the district court for Ramsey county upon fire insurance policies. The cases were tried together before Hanft, J., who directed verdicts in favor of plaintiffs. Defendants appealed

[1]Reported in 207 N. W. 625.

from orders denying their motions for judgment notwithstanding the verdicts or for a new trial.   Affirmed.

*Doherty, Rumble, Bunn & Butler,* for appellants.

*William Bauer* and *John J. Keefe,* for respondents.

QUINN, J.

Plaintiffs held a leasehold upon the Keewaydin Hotel, located on the shore of Lake Minnetonka, which, according to the terms of the lease, would expire May 3, 1933. On May 5, 1924, each defendant issued its policy of fire insurance to plaintiffs, covering the leasehold, amounting in the aggregate to $10,000. The property was totally destroyed by fire on May 18, 1924, resulting in the cancelation of the lease. All policy forms were alike. By stipulation of the parties, all five cases were tried together. At the close of the trial, the court denied the motion of the defendants for a directed verdict and granted a like motion on behalf of plaintiffs. The appeal is from an order denying the alternative motion of defendants for judgment or a new trial.

At the trial, plaintiffs offered no evidence as to the value of the leasehold or as to the loss or damage, claiming that the policies were valued, not open. The court ruled in accordance with that theory holding that the amount recoverable was fixed by the policies and should be determined therefrom, and accordingly directed a verdict against each defendant for the amount asked for in the complaint, which verdicts amounted in the aggregate to $8,462.80.

The Standard Fire Policy statute, G. S. 1923, § 3512, among other things, provides that no fire insurance company shall issue, on property in this state, any policy other than the standard form herein set forth, the blanks for which may be filled by print or in writing and no condition, stipulation or term, other than those therein provided for, shall be valid if inserted in any such policy, except as follows: "It may print or use in its policy printed forms for insurance against loss of rents and rental values, leaseholds, values, use and occupancy." It further provides: "The period of indemnity under this contract shall be limited to such length of time

(commencing with the date of the fire and not limited by the date of the expiration of the policy) as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property described in said policy as may be destroyed or damaged." The statute makes no specific reference to how the indemnity under such a policy shall be determined in the event of cancelation of the lease by fire. However, that aspect of the situation was clarified by typewritten provisions in the form of riders placed upon the standard form of policies used, which fixes the value of the property insured in the event of the cancelation of the lease by fire. The value so fixed and agreed upon by the parties to the contract of insurance should be, and we hold is, conclusive in the absence of fraud, 14 R. C. L. 1305; Millaudon v. Western M. & F. Ins. Co. 9 La. 27, 29 Am. Dec. 433; Luce v. Dorchester Mut. F. Ins. Co. 105 Mass. 297, 7 Am. Rep. 522; Patapsco Ins. Co. v. Biscoe, 7 Gill & J. (Md.) 293, 28 Am. Dec. 219, and note; Lewis v. Rucker, 2 Burr. 1167, 14 Eng. Rul. Cas. 215; 14 R. C. L. 1295, par. 467.

The typewritten provisions on a $1,000 policy are as follows:

"In the event of loss or damage by fire during the term hereof, this Company shall be liable for its proportion of the actual loss of such leasehold interest which interest at the date of this policy is estimated at Ten Thousand Dollars ($10,000.00).

"It is understood and agreed that the amount of this policy shall be automatically reduced in the sum of $9.26 at the end of each month after the date of this policy, and in the event of cancellation of the lease by fire in accordance with the conditions of the Fire Clause hereinbefore quoted, this Company shall be liable to the insured for actual loss sustained to not exceeding whatever amount of insurance remains in force at the date of the fire to be computed as follows:

"Loss for the first three months succeeding the fire to be paid cash without discount; loss for the remaining months of the unexpired lease to be paid cash less discount of that sum which will leave an amount payable for each separate month which at four per cent (4%) interest compounded annually will amount to the in-

creased rental value which would have been realized by the assured in the ordinary course of business had lease not been terminated."

The paragraph first above quoted provides that the company shall be liable for its proportion of the *actual loss of the leasehold interest*, which interest, at the date of the policy, is estimated at $10,000. The meaning of this provision is no different than it would be if the words "estimated at" had been omitted. The meaning is the same as though the word "fixed" had been used in lieu of the word "estimated." The entire phrase was for the purpose of naming the value of the interest to be covered by the policy as agreed upon by the parties, as well as the highest amount of concurrent insurance permissible. It names the value of the insurable interest as agreed upon by the parties to the contract. It fixed the total amount of concurrent insurance from which a monthly reduction of $92.60 was to be made for the purpose of showing the amount of insurance remaining in force from month to month.

As used in subdivision 7 of section 3512, the word "estimated" is synonymous with "fixed" or "determined." It is there provided that "said property is insured for the term * * * against all loss or damage by fire originating from any cause except invasion [etc.] the amount of said loss or damage to be estimated (fixed or determined) according to the actual value of the insured property at the time when such loss or damage happens, except in case of total loss on buildings." Here we find the word "estimated" used in the statute providing for the fixing and determining of the amount to be paid on account of the loss or damage. If the word "estimated" be used in the typewritten rider, as it is used in the statute, it can mean no less than the positive fixing of the leasehold interest at the date of the policies.

It will be observed from the provision of the statute that the company may print or use, in its policy, printed forms for insurance against loss of rents, rental values and leasehold interests. This is just what was done in the instant case. The companies received the premium for one year in advance. There is no claim of fraud or false representations in the procurement of the insurance or in

connection with the loss. We reach the conclusion that the policies are not in violation of the statute, that they are valued policies, and that the value of the unexpired term of the leasehold is the measure of the loss which may be computed from the face of the policies.

There was a total loss within the period covered by the policies. The lease was canceled by fire and there could be no repair, no re-building. The interest covered by the policies ceased to exist. There is not an atom of it left. We find no provision in the statute prohibiting the issuance of valued policies upon personal property. "No fire insurance company shall issue on property in this state any policy other than the standard form herein set forth, * * * and no condition, stipulation or *term* other than those therein provided for, whether as to jurisdiction, limitation, magistrate, certificate or otherwise, shall be valid if inserted in any such policy, except as follows: * * * It may print or use in its policy printed forms for insurance against loss of rents and rental values, leaseholds, values, use and occupancy."

The great weight of authority is to the effect that a valued policy, or a policy which is analogous thereto, insofar as it prescribes a method of fixing the amount of the loss covered, is unobjectionable and binding as between the parties. 32 C. J. 1112; O'Brien v. North River Ins. Co. 128 C. C. A. 618, 212 F. 102, L. R. A. 1917C, 722; Empire Dev. Co. v. Title G. & T. Co. 225 N. Y. 53, 121 N. E. 468; Fidelity U. F. Ins. Co. v. Mitchell (Tex. Civ. App.) 249 S. W. 536, 26 Cyc. 572, 672. Especially does this rule apply where the amount of the loss is incapable of exact and accurate measurement. Whitney Est. Co. v. Northern Assur. Co. 155 Cal. 521, 101 Pac. 911, 23 L. R. A. (N. S.) 123, 18 Ann. Cas. 512.

The holding in the O'Brien case above cited is in line. The rule there stated is applicable here:

"The general principle that insurance is to be regarded a contract of *indemnity* is limited by the rule that the parties to the contract may agree on a valuation in advance, not only in the insurance of tangible property, but of expected profits or gains, and that in the absence of fraud this valuation is controlling, and is not subject to

judicial inquiry. When the parties fix the value the insurer cannot be heard to say it was excessive. (Many cases cited)  *  *  *

"No attention had been paid to the usual printed clauses pretending to limit liability to the actual value of the property lost, for the case is controlled by the special contract which was written and pasted on a standard policy."

A comparison of the policies with the lease discloses that the insurers all understood precisely what the insured's interest was in the leasehold at the date of the policies. There is no uncertainty in the valuation fixed upon by the parties, for it was plainly stated in each policy to be $10,000. This valuation was to be reduced at the rate of $92.60 per month, and accordingly it was agreed and understood between the parties to the contract of insurance that the amount of each policy should be automatically reduced each month in the same proportion. We reach the conclusion, applying the rule that when a policy of insurance is susceptible of more than one construction, the one should be taken which is most favorable to the assured. (Liverpool & L. & G. Ins. Co. v. Kearney, 180 U. S. 132, 21 Sup. Ct. 326, 45 L. ed. 460), that the trial court was clearly right in directing a verdict.

Affirmed.