HENRY SCHAFFER v. HAMPTON FARMERS MUTUAL FIRE INSURANCE COMPANY.[1]

November 18, 1932.

No. 29,011.

[1]Reported in 245 N. W. 425.

See 183 Minn. 101, 235 N. W. 618, 236 N. W. 327.

*Albert Schaller* and *Kueffner & Marks,* for appellant.

*D. L. Grannis,* for respondent.

WILSON, C. J.

Plaintiff appealed from an order denying his alternative motion for judgment non obstante or a new trial.

The action is to recover upon a fire insurance policy containing a clause:

"If the risk be increased   *   *   *   by any means whatever within the control of the assured,   *   *   *   the policy shall be void."

Plaintiff owns a farm near Hampton on which he formerly lived. In 1925 he left the farm and moved to St. Paul, some 33 miles away, and it has since been occupied by the Weiler family as tenants. There were two barns on the farm. On December 17, 1928, these barns and a silo were destroyed by fire.

At the time of the fire one of the barns contained a very extensive still and apparatus for the making of moonshine liquor. The evidence shows that there were some 25 to 40 jugs in the barn, most or all of which contained alcohol; that there were at least 50 barrels in the barn, most or all of which were full of corn mash; that there were two heating stoves; galvanized tank; pressure tank; and pipes connecting the tanks and jugs. On the morning after the fire there were three large truck loads of barrels and stoves and two large truck loads of cracked corn hauled away. The cracked corn was quite wet, and the stoves then contained coal fire.

The case has been here before. 183 Minn. 101, 235 N. W. 618, 236 N. W. 327. The first trial resulted in a disagreement; the second trial resulted in a verdict for plaintiff; and the third trial resulted in a verdict for defendant.

When the case was here before we held as a matter of law that the risk was increased because of the operation of the still in the barn; but a new trial was granted on the single issue as to whether or not the assured was in control of the means by which the risk was so increased. This depended upon whether plaintiff had knowledge thereof.

■ In the last trial the evidence was substantially the same as in prior trials as to the presence, conditions, and circumstances of the still and its equipment and materials to be used. We previously held that the facts and surrounding circumstances were such that the jury might infer that plaintiff had knowledge of its existence. In the last trial plaintiff undertook to remove the opportunity for such a permissible inference. He took the witness stand and denied knowledge thereof. He testified that the last time he was in the barn was on October 9 and 10, 1928, that no such apparatus was then in the barn, and that he never knew of the still's being there until the time of the fire. There is no direct evidence in the case as to when the equipment was installed in the barn. Another witness testified that he was in the barn on October 9, 1928, and saw nothing there in the way of a still. Another neighbor was there in the fall of 1927 or 1928, he cannot say which, but he saw two barrels and a disconnected tank, which he said were somewhat similar to a range boiler on a kitchen stove. He said it might have been a pressure tank. It had a gauge on it.

Plaintiff contends that the jury disregarded the clear, positive, and unimpeached testimony of himself and the other witness and that such testimony was in no way improbable or contradictory. He claims that such testimony could not be disregarded within the well established rule. O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430; First Nat. Bank v. Van de Putte, 187 Minn. 96, 244 N. W. 416; Case v. Fevig, 187 Minn. 127, 244 N. W. 821.

Indeed these two witnesses are not directly disputed; but when their testimony is considered in the light of other testimony in the case and of the testimony of plaintiff himself, we find facts and circumstances which permit the jury to reject such testimony. The

still and its attachments and magnitude may indicate that it had been installed a long time before the fire. In the light of the evidence in the case, it must have taken a considerable length of time to install this equipment and to assemble all of the corn mash in the 50 or 60 barrels and then to make at least a partially finished product which was in the jugs; and it would not be unreasonable for the jury to find that the still operation had been commenced at a time more than two months before the fire. It is also important to note that the testimony shows that there was a still on this farm in April or May, 1927, and in August, 1927. Different witnesses so testified. Some found this barn locked, and they entered through the window, apparently to satisfy their curiosity to see a still, perhaps one in operation. Plaintiff was on his farm at different times in 1927, but claims he did not in that year go in any barn thereon. This may have been a peculiar claim in the judgment of the jury. Ordinarily one in his situation would have been expected to look about the buildings and therein when he was at the farm. He was not able to state whether the barn was locked or not. His answers were evasive. The record indicates that he was not candid and that he was not entirely fair in giving his testimony. He knew that Weiler, the tenant, made moonshine on a farm where he lived before he rented plaintiff's farm, and he knew that Weiler had been "pinched" for that. He there visited Weiler on several occasions. Plaintiff was asked whether or not liquor was made on his farm before Weiler moved there, and he refused to answer the question. It was a pertinent and proper question, and plaintiff's evasion not only showed the jury that he was not frank but it tended to discredit him. He admitted that on one occasion a man hauling grain on the farm called his attention to a "coil" in the granary on the farm. This seemingly referred to threshing time in 1927 or 1928. The jury could consider the probability of the coil's causing plaintiff to think of Weiler making liquor, whether it was a lead coil or a copper coil as plaintiff now asserts. Plaintiff referred to it as "Weiler's coil."

To summarize the circumstances that permitted the jury to decline to follow testimony which plaintiff claims was unimpeached,

we have this: A large and extensive still was in operation; circumstances and a permissible inference tend to indicate that intoxicating liquor was made on the farm while plaintiff lived there; that plaintiff knew that Weiler made moonshine liquor immediately before he moved onto this farm; that a still was on the premises in 1927; that plaintiff's testimony that he was not in the barns in that year was unusual and in a measure under all the circumstances unreasonable; that plaintiff saw "Weiler's coil" in the granary in 1927 or 1928; that the plaintiff's testimony was evasive, uncertain, and apparently was not candid and frank. The record therefore permits the triers of fact to find that the plaintiff did have knowledge of the existence of the still, and they were not required blindly to accept the assertion of plaintiff nor to consider themselves controlled by the recollection of time on the part of the other witness, whose memory may have been dimmed by the lapse of time and who never at any time made a disclosure of a very definite or satisfactory examination so as now to determine particularly what was or was not in the barn at the time.

■ Plaintiff makes several assignments of error in relation to the charge to the jury. These attacks upon the charge are largely mythical and fanciful. The issue was definitely stated, and apparently because of the rather extended litigation the jury was admonished that no other tribunal had ever passed upon the question submitted to it and that it could not therefore be guided by what any previous jury had done or by what the supreme court had said. There was no chance for misunderstanding. A concrete discussion on these assignments would not be helpful and is not necessary. Plaintiff cannot complain that the jury was told that the risk had been increased.

Affirmed.