# EVELYN NATHAN v. ST. PAUL MUTUAL INSURANCE COMPANY.[1]

January 21, 1955.

No. 36,252.

[1]Reported in 68 N. W. (2d) 385.

Lowell W. Benshoof and P. F. Schroeder, for appellant.

Henry Halladay, Curtis L. Roy, and Dorsey, Colman, Barker, Scott & Barber, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff brought this action on an insurance policy claiming that on and before March 14, 1949, she was the owner of a frame building in Fosston, Minnesota. She claims that she bought the building in 1946 and later moved it about three miles into Fosston, where an eight-room addition was erected and other improvements were made so that there were 16 rooms capable of housing four families. On March 14, 1949, she applied to defendant insurance company, through its agent at Bemidji, for a fire insurance policy of $12,000 on the building. Plaintiff stated that, in applying for the insurance, she told defendant's agent that the old part and the new addition of the

building were in good shape; that she was the sole owner of the property; and that it did not have any mortgages or liens against it. The policy was issued for $12,000 and mailed to plaintiff, for which she paid a premium of $173.40. The policy ran for a period of three years, expiring March 14, 1952. On January 27, 1952, the building was completely destroyed by fire. This litigation involves the claim of plaintiff under the policy. The case was tried before a jury, which returned a verdict for defendant.

At the trial, evidence was introduced by defendant, over plaintiff's objection, which tended to show that, at the time plaintiff applied for fire insurance, the building in question was in a poor state of repair, especially the eight-room addition; that the structure was not properly set on its foundation; and that the building did not have central heating, plumbing, or electric lighting. Defendant contends in its brief that it "was a veritable 'fire trap.'" Defendant also introduced evidence to the effect that, when plaintiff applied for the insurance, she did not have title to the premises and that they were encumbered with a mechanic's lien.

Plaintiff contends that under the Minnesota "valued policy" law (M. S. A. 65.05) this evidence was inadmissible. Section 65.05 provides in part:

"Every company insuring any building or other structure against loss or damage by fire, lightning, or other hazard, by the issue of a policy or renewal of one theretofore issued, or otherwise, shall cause the structure to be previously examined, a full description thereof to be made, and its insurable value to be fixed, all by the insurer or his agent, and the amount thereof to be stated in the policy. In the absence of any change increasing the risk, without the consent of the insurer, of which the burden of proof shall be upon it, and in the absence of intentional fraud on the part of the insured, the whole amount mentioned in the policy or renewal upon which the insurer receives a premium, shall be paid in case of total loss, and in case of partial loss, the full amount thereof."

It is undisputed that defendant or its agent did not "cause the structure to be previously examined, a full description thereof to be made, and its insurable value to be fixed." Rather, it appears that, when plaintiff applied for the insurance, she said that the building was in good shape and reasonably worth $12,000, and that that was the amount which was "stated in the policy."

Defendant recognizes that the inspection required by the statute precludes argument as to the value because the statute makes valuation conclusive. It argues, however, that at the trial it established three defenses to the satisfaction of the jury, namely, that the policy was void (1) because plaintiff lacked an insurable interest in the premises; (2) because it was induced by material misrepresentations made with intent to deceive and defraud as to matters which increased the risk of loss; and (3) because, without the assent of the insurer, a restaurant was operated on premises insured for dwelling purposes, which either altered the situation so as to increase the risk or constituted an attempt to defraud the company.

■ The basic principle of a "valued policy" statute is that the parties to a fire insurance contract agree in advance on a valuation of the property to be insured, and, in the absence of fraud, this valuation is binding and not subject to judicial inquiry. Romain v. Twin City F. Ins. Co. 193 Minn. 1, 258 N. W. 289; Unton v. Liverpool, L. & G. Ins. Co. 166 Minn. 273, 207 N. W. 625; see, 9 Dunnell, Dig. (3 ed.) § 4803; 1 Couch, Cyclopedia of Insurance Law, § 74b.

Patterson, Essentials of Insurance Law, § 32, p. 118, attributes the passage of valued policy statutes to the indifference of insurance agents to the amount of insurance which their customers needed; to the fact that agents received larger commissions by selling the insured needless protection; and to the fact that the honest insured paid unnecessary premiums and the dishonest insured was tempted to commit arson. But even so, according to Patterson, the insurance companies found it more economical to pay excessive claims than to make an appraisal of every property insured. Thus, the purpose of valued policy statutes is twofold: (1) To prevent overinsurance by requiring prior valuation; and (2) to avoid litigation by prescribing

definite standards of recovery in case of total loss. 49 Col. L. Rev. 818, 825; Ackerman, Insurance (3 ed.) p. 96.

The problem before us was considered in Insurance Co. v. Leslie, 47 Ohio St. 409, 24 N. E. 1072, 9 L. R. A. 45, which involved the construction of an Ohio valued policy statute essentially the same as § 65.05. The court there reasoned (47 Ohio St. 415, 24 N. E. 1074):

"If, after the policy is issued, there be any change in the condition or surroundings of the property which increases the risk without the consent of the insurer, or if there be intentional fraud on the part of the insured, these are regarded by the statute as matters of substance, and may defeat a recovery on the policy; but where there has been no intentional fraud on the part of the insured, a condition or situation of the property at the time of the insurance, which the examination, that the agent is required by the statute to make, should have reasonably discovered, cannot, we think, be made available for that purpose; nor can the insurer, in case the property is entirely destroyed, be allowed to show that the value of the property is less than the amount mentioned in the policy.

\* \* \* \* \*

"*\* \* \* And the statements in the application, of the value of the property, and its condition, in regard to which the company should have been informed by the examination the statute required it to make, were immaterial, upon which the insurer had no right to rely, and could not be fraudulent.*

"Nor do we think the operation of the statute can be defeated, by the neglect of the agent to make the examination, or fix the insurable value of the property, as it requires. The duty of the company is to obey the law, and its disregard of that duty can give it no greater rights than the observance of it would." (Italics supplied.)

The effect of that case was to give meaning to the Ohio statutory requirement that the insurer *inspect* the property as well as fix the insurable value thereof.

In United States F. Ins. Co. v. Sullivan (8 Cir.) 25 F. (2d) 40, 42, certiorari denied, 278 U. S. 608, 49 S. Ct. 12, 73 L. ed. 534, the court considered a statute which required the insurer to fix the value of

the insured property. The court reasoned that the statute involved there necessitated prior inspection and stated:

"* * * If the insurer performs its full duty, in this respect, it is bound by its estimate of value based thereon unless conditions (reducing value), not ascertainable by a reasonably careful inspection and known to the insured, are withheld by the insured. But the insurer cannot close its eyes, make no reasonable investigation, take the bare word of the insured as to value and thereafter challenge such value. To permit this would be to nullify the good effect intended by the statute. It would reinstate the very situation and condition which the statute sought to destroy and prevent. It would encourage conscious overvaluation and, possibly, resulting arson."

The United States Supreme Court considered the constitutionality of a valued policy statute in Orient Ins. Co. v. Daggs, 172 U. S. 557, 565, 19 S. Ct. 281, 284, 43 L. ed. 552, 555, and, in discussing the effect of such statutes, made the following statement:

"* * * Risk then can only come from the failure to observe care—that care which it might be supposed, without any prompting from the law, underwriters would observe, and which if observed would make their policies true contracts of assurance, not seemingly so, but really so; not only when premiums are paying, but when loss is to be paid."

Minnesota decisions construing the valued policy statute on points other than the one at bar use language similar to that used in the cases just discussed. In Aiple v. Boston Ins. Co. 92 Minn. 337, 100 N. W. 8, the statute was construed to safeguard the rights of both insured and insurer against fraudulent representations of value by requiring the insurer to inspect the property and to examine the structure as to value.

In Cement, Sand & Gravel Co. v. Agricultural Ins. Co. 225 Minn. 211, 218, 30 N. W. (2d) 341, 346, there was a dispute as to what property was included within the description of the policy, and the court there stated:

"* * * Insurance companies survey the property which they insure, and they should not later be heard to say that they were not familiar with its nature, its ordinary use, and the manner in which it was kept. [Citing cases.] In behalf of defendants, an insurance rating bureau was required to and did survey the premises here involved, and its knowledge of these significant factors may be presumed."

The evident purpose of § 65.05 in requiring the insurer to fix the insurable value of the property and also to previously examine the structure is to give the insurer notice of the nature and use of the property and the condition of the premises, including the state of repair. This knowledge should enable the insurer to determine for itself the condition of the property with reference to its insurability, and, in case insurance is issued, the insurer will be able to value the property with reasonable accuracy. That this is the intent of the legislature is made clear by that portion of § 65.05 which provides that, in the absence of a "change increasing the risk" of loss without the insurer's consent, the whole amount of the policy is payable on a total loss. Thus, the insurer should know the nature and ordinary use of the structure in order to determine whether there actually was a change which increased the risk of loss.

Much of the evidence introduced over plaintiff's objections involved conditions which existed before or at the time plaintiff applied for insurance and which reasonably could have been observed or ascertained if an inspection had been made; for example, whether the house was set properly on its foundation; the type of heating and plumbing systems; the general appearance of the structure; and other fairly obvious conditions. That evidence did not concern any change, after the policy was issued, increasing the risk of loss without the insurer's consent.

We agree with the reasoning of Insurance Co. v. Leslie, 47 Ohio St. 409, 24 N. E. 1072, and conclude that the nature, use, and condition of a structure which reasonably are discoverable by an inspection at the time the fire insurance policy is issued or renewed cannot be shown by the insurer as proof that, relative to those matters, the

insured committed intentional fraud or misrepresentations increasing the risk of loss. And failure to inspect shall not put the insurer in any better position than if an inspection had been made. To adopt the views of defendant would be to nullify the statutory duty of inspection and render the statute wholly ineffective.

■ However, this does not prevent defendant from introducing evidence relative to any change subsequent to the date the insurance was issued if the change results in an increase in the risk of loss which existed at the time the loss occurred. When the insurer sets up a forfeiture of the policy growing out of a violation of a provision to the effect that the policy would be void if, without the assent of the insurer, the situation or circumstances affecting the risk should be increased by the insured, the burden is upon the insurer to prove such violation. What constitutes an increase of risk is a question of fact for the jury unless the increase is obvious. 9 Dunnell, Dig. (3 ed.) § 4769, and cases cited. See, also, Taylor v. Security Mut. F. Ins. Co. 88 Minn. 231, 92 N. W. 952.

There are, however, exceptional cases where courts have held as a matter of law that the risk was increased. In Betcher v. Capital F. Ins. Co. 78 Minn. 240, 80 N. W. 971, the insured paid an extra premium for a permit to store fireworks for 15 days in the building containing the insured property. Eleven days after the limit had expired, the property was destroyed by fire as the result of an explosion of the fireworks. The court said there that the insured, by the act of securing the limited permit and paying the extra premium, conceded that the storing of fireworks increased the hazard and held as a matter of law that the risk was increased by the keeping of the fireworks in the building after the permit expired and that the policy thereby was rendered void.

The question whether an increase of risk was one of fact for the jury would have to rest largely on the conditions presented in each case involved. In some cases such an increase of risk would be obvious. For example, in Schaffer v. Hampton Farmers Mut. F. Ins. Co. 183 Minn. 101, 235 N. W. 618, 236 N. W. 327, this court said that the evidence was conclusive that the operation of a still and the

storing of alcohol in an ordinary barn increased the fire hazard as to such structure. It further said that the question whether such operation and storing by a tenant was within the control of the landlord within the meaning of the policy so as to void the insurance was one for the jury. The case was remanded for new trial on the single issue whether the increased risk created by the operation of a still by the tenants in the barn was within the control of the landlord so as to void the policy. The jury then found for defendant insurance company. Upon appeal (Schaffer v. Hampton Farmers Mut. F. Ins. Co. 187 Minn. 310, 245 N. W. 425), the landlord contended that the jury disregarded the clear, positive, and unimpeached testimony of himself and another to the effect that he did not know of the existence of the still until after the fire. We affirmed, stating that there was evidence which permitted the jury to decline to follow plaintiff's claims.

The evidence in the case at bar relative to the alleged operation of a lunch counter or restaurant in the dwelling properly was admissible under § 65.05 for the purpose of proving a change which increased the risk of loss.

Romain v. Twin City F. Ins. Co. 193 Minn. 1, 258 N. W. 289, held that § 60.85 applies to fire insurance policies as well as life and other insurance contracts. That section provides:

"No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

Thus, § 60.85 may be characterized as a general statute involving fire, life, and other insurance, while § 65.05 is a special statute covering fire insurance only. Under § 60.85, misrepresented facts which increase the risk of loss are admissible to avoid the policy even though these facts would be inadmissible under § 65.05 because the misrepresentations would have been discoverable by a reasonably careful inspection of the premises prior to the issuance of the insurance. Both of those sections deal with insurance and must be considered *in pari materia;* and where, as here, two statutes contain general

and special provisions which seemingly are in conflict, the general provision will be taken to affect only such situations within its general language as are not within the language of the special provision. State ex rel. Interstate Air-Parts, Inc. v. Minneapolis-St. Paul Metropolitan Airports Comm. 223 Minn. 175, 25 N. W. (2d) 718. Therefore, when both §§ 65.05 and 60.85 are applicable to the same fire insurance case, the special provisions of § 65.05 will prevail as an exception to the general provisions of § 60.85 where the two conflict. Judd v. Landin, 211 Minn. 465, 1 N. W. (2d) 861; § 645.26, subd. 1.

■ Plaintiff assigns as error the instructions to the jury on the issue of her claim of ownership and contends that only her insurable interest is material to recovery under the policy. The instructions to the jury on the issue of insurable interest were as follows:

"The issues in this case are not difficult. The plaintiff has, in the first instance, the burden of proving by a preponderance of the evidence, as I have defined it, first, that she is the owner of the property here in question or that she has an insurable interest; secondly, that her said property was insured against loss by fire by the defendant; third, that the loss occurred; and fourth, that the payment has not been made.

\* \* \* \* \*

"\* \* \* The term 'owner', as it applies to this case, is comprehensive and must be held to include any insurable interest or title which the plaintiff has, and which entitles her to the possession and use. An insurable interest exists when the insured derives money benefit or advantage by the preservation or continued existence of the property, or will sustain a money loss from its destruction. These tests you will apply in your consideration of the evidence in determining whether or not the plaintiff was the owner.

"A discrepancy in the title description, if such you find, that fact standing alone is not sufficient to void a policy. If you find, by a preponderance of the evidence, as I have defined it, that the plaintiff was the purchaser; that there was a meeting of the minds between the plaintiff and her grantor or grantors as to the tract involved

and that she had paid the purchase price; that she had bought and paid for the structure moved thereon; then she has sustained the burden of proving herself the owner and that she then would have an insurable interest. If her title is less than that, then you will determine it by the definition of insurable interest as I have defined it."

The rule as laid down by this court in Banner Laundry Co. v. Great Eastern Cas. Co. 148 Minn. 29, 34, 180 N. W. 997, 999, is as follows:

"* * * The authorities all agree that it is not necessary that the insured should have an absolute right of property, and that he has an insurable interest if, by the destruction of the property, he will suffer a loss, whether he has or has not any title to, lien upon, or possession of the property itself." (Citing cases.)

It is our opinion from the above-quoted instructions that the jury might well have believed that, in order for plaintiff to have an insurable interest, she must prove by a preponderance of the evidence that she was the purchaser of the premises; that there was a meeting of the minds between her and her grantors as to the tract involved; that she had paid the purchase price; that she had bought and paid for the structure moved thereon; and that the burden of proving her ownership was upon her. It is our further opinion that the instructions went beyond the legal requirement that all she had to show in order to establish an insurable interest was that she would suffer a loss by the destruction of the building and that the instructions given on that point were prejudicial to plaintiff.[2]

As was said in Zurko v. Gilquist, 241 Minn. 1, 5, 62 N. W. (2d) 351, 354:

"* * * Even though a jury charge may by close inspection be found to be technically correct in its entirety, a new trial should be granted if its impact upon the jury is likely to convey, and reason-

[2]The holder of a life estate, a lienholder, a tenant in common or co-owner, a holder of a leasehold interest, and a mortgagor of personalty with possession have been held to have insurable interests. 9 Dunnell, Dig. (3 ed.) § 4641.

ably does convey, an erroneous understanding of controlling principles of law."

■ It appears from the application which plaintiff made for the insurance that, in response to the question whether the property was encumbered, she answered that it was not. However, the record shows that at that time there was on file a mechanic's lien statement against the premises for electrical services in the amount of $200. When asked, upon cross-examination, whether she knew about this mechanic's lien when she applied for the insurance, plaintiff testified that she "never knew it until you said it right now." Defendant contends, however, that she was present when the lien claimant did the electrical work and that, from that evidence, the jury could have found that she was familiar with the situation and that she concealed the information about the lien with an intent to deceive and defraud; similarly, that the jury also could have found that this factor increased the risk by reducing her pecuniary interest in the property, thereby increasing the moral hazard.

We cannot agree, under the record here, that the mere fact that she said in the application that the premises were unencumbered when a mechanic's lien statement had been filed could be construed to be such an intent to deceive and defraud as to void the policy. In this instance, the lien statement was for only $200, whereas the face value of the policy was $12,000. It can hardly be said, under those circumstances, that this factor would increase the risk by reducing her pecuniary interest in the property, thereby increasing the moral hazard.

It is our opinion, under the record here, that a new trial should be granted.

Reversed and new trial granted.