CONTRACTS: OFFICERS' INTEREST IN: HOUSING AND REDEVELOPMENT AUTHORITIES: Housing and Redevelopment Authority Commissioner is not prohibited from performing work on projects approved by authority if notice and nonparticipation requirements of Minn. Stat. § 469.009 (1992) are met. Minn. Stat. §§ 469.009, 471.87 (1992)

90
(Cr. Ref. 430)

June 9, 1994

Ernest J. Danflinger
315 Fourth Street
Farmington, Mn 55024

Dear Mr. Darflinger:

In your letter to the office of the Attorney General, you set forth substantially the following:

## FACTS

Under Minn. Stat. § 469.003 (1992), each city in this state may establish a Housing and Redevelopment Authority (HRA). A Housing and Redevelopment Authority is composed of five commissioners appointed by the mayor with the approval of the governing body of the city.

The City of Farmington has established a Housing and Redevelopment Agency. Under the powers granted to in Minn. Stat. § 469.012 (1992), the Farmington HRA selects projects for redevelopment and enters into contracts with developers.

One of the current Farmington HRA commissioners is the owner and operator of a cabinet manufacturing business. This commissioner has stated his intent to bid on cabinet work for the developments which are the subject of Farmington HRA contracts for approved projects.

You ask substantially the following questions:

## QUESTION ONE

Do the conflict of interest provisions set forth in Minn. Stat. § 469.009 (1992) and Minn. Stat. § 471.87 (1992) prohibit this commissioner from bidding on and participating in projects approved by the Farmington HRA?

## OPINION

Subject to the conditions set forth below, we answer your question in the negative. Prior to 1981, a commissioner of a Housing and Redevelopment Authority was prohibited from

having any interest, direct or indirect, in any contract or proposed contract in connection with any project. Minn. Stat. § 462.431 (1980) In 1981, that absolute prohibition was replaced by Minn. Stat. § 462.432, which adopted a notice and non-participation requirement for situations in which official actions of a commissioner or employee could substantially affect "his financial interests, or those of a business with which he is associated." Act of May 4, 1981, ch. 79, 1981 Minn. Laws 313-315. Thus it appears to have been contemplated that, after 1981, commissioners might lawfully have a personal interest in projects or contracts approved by the HRA. Those notice and non-participation provisions are now contained in Minn. Stat. § 469.009 (1992). That section provides inter alia that a potential conflict of interest is present when:

> ...the commissioner knows or has reason to know that the organization with which the commissioner is affiliated is or is reasonably likely to become a participant in a project or development which will be affected by the action or decision.

The statute requires a commissioner who has a potential conflict of interest to disclose that potential conflict to the commissioners of the Authority in writing no later than one week after the commissioner becomes aware of the potential conflict. That commissioner is further prohibited from attempting to influence any employee in any matter related to the action or decision in question, cannot take part in the action or decision, and shall not be counted toward a quorum during the portion of any meeting of the Authority in which the action or decision is to be considered.

In addition to the disclosure and non-participation requirements pertaining generally to actions or decisions of the Authority, Section 469.009, subd. 3, specifically provides:

> A commissioner or employee of an Authority who knowingly takes part in any manner in making any sale, lease, or contract in the commissioner's or employee's official capacity in which the commissioner or employee has a personal financial interest is guilty of a gross misdemeanor.

(Emphasis added).

Therefore, it appears to be further contemplated that HRA commissioners may have a personal financial interests in sales, leases, or contracts of the Authority, but, in such cases, may not knowingly participate in their official capacities. This approach differs from that taken in Minn. Stat. § 471.87 (1992), which applies generally to public officers. That section provides:

> Except as authorized in section 471.88, a public officer who is authorized to take part in any manner in making any sale, lease, or contract in official capacity shall not voluntarily have a personal financial interest in that sale, lease or contract or personally benefit financially therefrom. Every public officer who violates this provision is guilty of a misdemeanor.

(Emphasis added).

Our office has previously held that this prohibition applies whenever an officer is "authorized to take part" in making a contract and may not be avoided by the officer voluntarily abstaining from participation. See, e.g., Ops. Atty. Gen. 90a December 29, 1958; 90E-5 February 25, 1954.

In seeking to resolve the apparent conflict, we turn to the rules of statutory construction, as set forth by the Legislature. In particular, Minn. Stat. § 645.26, subd. 1 (1992) provides:

> When a general provision in a law is in conflict with a special provision in the same or another law, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions be irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted at a later session and it shall be the manifest intention of the legislature that such general provision shall prevail.

Where two statutes contain general and special provisions which seemingly are in conflict, the general provision will be taken to affect only such situations within its general language as are not within the language of the special provision. Ehlert v. Graue, 292 Minn. 393, 195, N.W.2d 823, 826 (1972); Nathan v. St. Paul Mutual Ins. Co., 243 Minn. 430,

68 N.W.2d 385, (1955). Thus in our view, the "special" notice and non-participation provisions of Minn. Stat. § 469.009 will apply to specific circumstances where a commissioner or affiliated organization has a personal interest in, or intends to participate in, a project or contract to be approved by the HRA.

Another arguable approach to the same result may be to observe that, by virtue of the language contained in Section 469.009, a commissioner who knows, or has reason to know of a personal conflict of interest in an HRA project is simply not "authorized to take part" officially in making contracts associated with that project, and is thus not technically within the prohibition of Section 471.87.

From either perspective, we conclude that a commissioner may enter contracts in his or her private capacity upon HRA projects, if the notice and non-participation requirements of Section 469.009 are met. In that regard, while the commissioner's business will not be one of the developers whose projects will be directly approved by the HRA, it is possible that the commissioner could end up participating in the project through the bidding process conducted by the developer. The statute not only prohibits a commissioner from participating in decisions where the commissioner's later participation is certain, but also prohibits participation in decision making when the likelihood is indirect. Therefore, in our view, the commissioner should follow the disclosure and non-participation provisions set forth in Minn. Stat. § 469.009 whenever the commissioner intends to bid on work to be performed in a development project. If the commissioner were to contemplate bidding on work connected with a large portion of the HRA's projects, he would then be precluded from participating officially as a commissioner in connection with those projects. In such circumstances, the commissioner would be, in large part, ineffectual as a member of the HRA. Therefore, if the commissioner proposes to bid for work on a significant portion of the HRA-approved projects, he should consider resigning from his official position.

The problem you present is just one indication of the need for legislative clarification of the rules governing "conflicts of interest" in general and in government contracting in particular. The absolute criminal prohibition of Minn. Stat. § 471.87 against any public officer having any personal financial interest in, or gaining personal financial benefit however slight from, contracts, even as modified by the ad hoc series of exceptions contained in Section 471.88, stands in contrast to other statutory provisions, such as the notice and non-participation requirements contained in Section 10A.07 applicable to certain state and metropolitan local officials and in Section 469.009 discussed above. See also Lenz v. Coon Creek Watershed Dist, 278 Minn. 1, 153 N.W.2d 209 (1967) and E.T.O., Inc. v. Town of Marion, 375 N.W.2d 815 (Minn. 1985) which discuss the common rule of disqualification of public officials from participating in certain non-contract actions wherein they have a personal interest. [1]

There is no question that opportunity, or even the public perception of opportunity, for self-dealing by public officials must be carefully avoided. However, it is submitted that not every "personal financial interest" is of sufficient magnitude to support an absolute criminal prohibition against a public officer holding or continuing to hold office if a proposed "contract" affecting that interest may arise. Furthermore, in light of the severe consequences imposed for violation of the prohibitions of Sections 471.87 and 469.009, subd. 3, we believe that public officials are entitled to clearer directions concerning when, and how, their personal

---

1. It is not always clear whether the action before a public body is a "contract" subject to Section 471.87 or another sort of action which should be evaluated under the criteria discussed in Lenz. See also Minn. Stat. §§ 469.098 (Economic Development Authority). 469.113 (Area Redevelopment Agencies)

Ernest J. Danflinger
Page 6

interests may permissibly intersect with those of a government agency with which they serve.

Very truly yours,

HUBERT H. HUMPHREY III
Attorney General

KENNETH E. RASCHKE, JR.
Assistant Attorney General

(612) 297-1141

KER:sr.es7