# SEBASTIAN MACK v. PACIFIC MUTUAL LIFE INSURANCE COMPANY.[1]

April 9, 1926.

No. 25,155.

**Avoidance of insurance policy by material misrepresentation.**

1. A material misrepresentation in an application for insurance made with intent to deceive and defraud avoids the policy. Such misrepresentation will avoid the policy if the matter misrepresented increases the risk of loss even though it was not made with intent to defraud.

**Questions in application concerning ailments.**

2. General questions in such application calling for information concerning former ailments of the applicant do not require the disclosure of ailments of a trivial, temporary or unimportant nature but only those of a serious, dangerous or permanent character. Gruber v. German R. C. Aid Soc. 113 Minn. 340, followed.

**Questions to be submitted to jury.**

3. Usually it is for a jury to decide whether a misrepresentation has in fact been made, whether it is material, whether it was made with intent to deceive and defraud, or whether the matter misrepresented increases the risk of loss. Upon the facts disclosed it was necessary for the trial court to submit these questions to the jury.

**Witness should disclose only facts.**

4. A witness should not be permitted to answer "Yes" or "No" to the direct question as to whether the policy would have been issued had the facts been known—that being the ultimate question for determination by the jury—it being for the witness to disclose only the facts.

**Policy not avoidable because agent wrote incorrect answer when insured gave correct answer.**

5. Where the agent of the insurance company incorrectly wrote an answer in the application and insured was innocent thereof, the mis-

[1] Reported in 208 N. W. 410.

statement is not that of the insured who had orally disclosed the truth and the policy cannot be avoided on the claim that such statement is a material misrepresentation of the insured.

Evidence, 22 C. J. p. 502 n. 8.
Health Insurance, 29 C. J. p. 279 n. 11, 12; p. 284 n. 12.

See 14 R. C. L. p. 1021; 3 R. C. L. Supp. p. 330; 4 R. C. L. Supp. p. 936; 5 R. C. L. Supp. p. 792.
See notes in 4 L. R. A. (N. S.) 607; L. R. A. 1915A, 273; 14 R. C. L. p. 1174; 3 R. C. L. Supp. p. 351; 5 R. C. L. Supp. p. 799.

Action in the district court for Hennepin county to recover upon a health policy. The case was tried before Baldwin, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*John G. Priebe* and *Jamison, Stinchfield & Mackall,* for appellant.
*Claude Krause* and *Cobb, Wheelwright, Hoke & Benson,* for respondent.

WILSON, C. J.

Defendant appealed from an order denying its motion for judgment non obstante or for a new trial. Plaintiff prosecuted this action to recover upon a health policy which defendant says was procured by false statements in the application. The statements of plaintiff in the application which constitute the basis for the defense are: (a) That he never had kidney or bladder disease; (b) that he never had fistula; (c) that during the last seven years he had not consulted or been treated by any physician except Drs. W. H. Valentine and Helen Hughes Hilscher; (d) that he had never received any compensation for accidental injuries or sickness. The application for insurance was made August 5, 1921, and the policy bears the same date.

(a) On January 1, 1917, the insured consulted Dr. Workman for the grippe. The doctor saw him on January 3, 5, 7, 8, 9, 10 and 24. On the last four dates the insured went to the doctor's office. When the doctor first saw him he had a temperature and complained of

pain in the small of the back. From a urinalysis a trace of albumin and pus was found. He was kept in bed a few days. His bladder was irrigated. This treatment was painful. He was given medicine which produced alkalinity of the urine and was advised to drink large quantities of water to flush out the kidneys and bladder. The medicine was later changed to urotropin which is a urinary antiseptic. The doctor told him his "kidneys were a little off" and would quickly clear up, as they did. On January 10 his condition was substantially normal, and on the twenty-fourth he was discharged. The doctor testified that during this period the insured had acute cystitis or infection of the bladder and acute pyelitis or infection of the kidneys, and that his condition was serious. On January 13, 1917, the attending doctor made a preliminary statement of sickness to the Interstate Business Men's Accident Association with whom respondent then carried health insurance in which he termed the nature of the illness: "La grippe followed by a mild pyelitis and cystitis." On January 24, 1917, the attending doctor made an affidavit as a final statement to the insurance company and referred to the nature of the illness as "la grippe, acute pyelitis and cystitis mild." On January 26, 1924, the doctor wrote counsel for the insured, referring to the ailment as pyelitis and a mild cystitis and stated that "under rest and urinary antiseptics and irrigation of the urinary bladder he showed no trouble when last seen by me on January 24th, 1917." When the insured made a preliminary statement in reference to said illness to the insurance company he said the nature of the illness was "grip, kidney and bladder trouble." The same statement was repeated in his final statement to the insurance company. This trouble has never recurred.

(b) Some time prior to February 26, 1917, plaintiff had an anal fistula and about that time Dr. Helen Hughes Hilscher performed a hemorrhoidectomy upon the plaintiff. Hemorrhoids are ordinarily known as piles. From a medical standpoint fistula is quite different from piles. Yet Dr. Hilscher testifying in the trial said: "This man, Mr. Mack, had the condition known as piles. I found piles (we use the word 'piles,' the condition generally known as piles), a fissure and fistula." Dr. Hamilton testified that fistulas are a com-

mon part of hemorrhoids. It would seem that fistulas are usually included by laymen in the term "piles," which in a technical medical term is known as "hemorrhoids." On March 22, 1917, plaintiff made a preliminary statement of sickness to the insurance company above mentioned, reporting the nature of his illness as "rectum trouble." The record does not disclose that the insured knew the distinction between fistula and piles. The question was whether he ever had or been treated for gastric or duodenal ulcer, indigestion, appendicitis, piles, fistula. He answered: "Yes, piles." He then mentioned the operation.

(c) On February 11, 1915, the insured consulted Doctor Workman about a sore mouth. This ailment was trivial. On August 1, 1916, the same doctor removed under cocaine what was probably a chicken bone lodged in a fissure in the rectum. Doctor Workman, in January, 1917, was consulted by plaintiff as above mentioned. Insured omitted to disclose Dr. Workman as one of the physicians consulted or treating him during the seven years immediately prior to making the application.

(d) Insured received from the above mentioned insurance company $13.57 covering the first 8 days of January, 1917. He also received $146 for 41 days confining disability and $20 for two weeks nonconfining disability, or a total of $166.40, incident to his operation of hemorrhoids. A portion of the answers in the application was written by hand but question No. 14: "Have you ever received or been refused compensation for accidental injuries or sickness?" was answered "no" in typewriting. Insured testified that the typewritten answer was not in the application when he signed it. He is corroborated by another witness. Insured and the corroborating witness testified that insured orally disclosed in detail the fact of his having received compensation as above mentioned.

1. A material misrepresentation in the application made with intent to deceive and defraud avoids the policy. Such misrepresentation will avoid the policy if the matter misrepresented increases the risk of loss, even though it was not made with intent to deceive or defraud. G. S. 1923, § 3370; Price v. Standard L. & A. Ins. Co.

90 Minn. 264, 95 N. W. 1118; Johnson v. Nat. L. Ins. Co. 123 Minn. 453, 144 N. W. 218, Ann. Cas. 1915A, 458; Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474; Ivanesovich v. N. A. Life & C. Co. 145 Minn. 175, 176 N. W. 502; First Nat. Bank of Duluth v. Nat. L. Ins. Co. 156 Minn. 1, 194 N. W. 6, 38 A. L. R. 380. The burden of proof is on the defendant.

2. The general questions in an application for insurance calling for information concerning former ailments do not require the disclosure of ailments of a trivial, temporary or unimportant nature but only those of a serious, dangerous or permanent character. Gruber v. German R. C. Aid Soc. 113 Minn. 340, 129 N. W. 581; Ames v. N. Y. Life Ins. Co. 154 Minn. 111, 191 N. W. 274.

3. If the evidence is conclusive in establishing a misrepresentation within the spirit of the law, as above stated, a question of law is presented. In Flikeid v. N. Y. Life Ins. Co. 163 Minn. 127, 203 N. W. 598, and Shaughnessy v. N. Y. Life Ins. Co. 163 Minn. 134, 203 N. W. 600, the matters concealed were so directly connected with glioma, the cause of death in each case, and the evidence was so conclusive, we held that the defense was established as a matter of law. In the case at bar all former ailments were cured and had no connection with present ailments. Usually it is for a jury to decide whether a misrepresentation has in fact been made, whether it is material, whether it is made with intent to deceive and defraud or whether the matter misrepresented, in fact, increases the risk of loss. Price v. Standard L. & A. Ins. Co. supra; Johnson v. Nat. L. Ins. Co. supra; Ivanesovich v. N. A. Life & C. Co. supra; Ames v. N. Y. Life Ins. Co. supra. The jury necessarily took into consideration the lapse of time since insured had the ailments in question, how severe they were and how fully he had recovered as bearing upon the element of intent to deceive and defraud and as to whether the company would have issued to him the policy had it known what he did not state.

4. The proper practice in the trial of the question as to whether the insurer would have issued the policy had it known the true facts, is to permit the witnesses to disclose the facts and the trier

of fact will decide. In this case some of the witnesses were asked whether, if they had known the true facts, a policy would have been issued. Such question calls for an answer which is the ultimate question of fact to be determined by the jury. This practice is not commendable.

Whether insured failed to disclose the truth in reference to the matter misrepresented, as set forth in paragraphs a, b and c of the statement of facts herein, with intent to deceive and defraud, whether any or all of the ailments not disclosed were temporary or transitory, whether Dr. Workman's name might have been omitted as attending physician because such ailments were temporary, and whether any of such misrepresentations were material and increased the risk of loss, were questions of fact to be determined by the jury and the trial court so held. The jury was permitted under the charge and under the evidence in this case to conclude that the insured did not fail to disclose the fistula, but that on the contrary the information given by him should have been construed as covering an ailment which as commonly understood includes the particular affliction of fistula. The jury also would have been justified in saying that, even if there was a misrepresentation in respect to any of the ailments mentioned, it was immaterial because of a complete recovery several years prior to making the application and having no connection with present afflictions. It was also permissible for the jury to find that, had the truth been disclosed in reference to all of the misrepresentations, the insurer would nevertheless have accepted the risk.

We do not find it necessary to pass upon the specific argument of respondent that the evidence was insufficient to take the case to the jury on the theory that the insurer had knowledge of the true facts and upon the insufficiency of the evidence to establish the fact that the insurer would not have issued the policy had it known the truth. If there was any such error in the case respondent has not been prejudiced by it and is not in a position to take advantage of it in this court.

5. The evidence in reference to the nondisclosure as to having received compensation for sickness is in conflict. The record justi-

fies a finding by the jury that the plaintiff made a full and truthful statement to the agent of the insurer at the time of signing the application. It would also support the inference that the hand-written answers in the application were made at the time of its execution and that the particular answer in question written in by typewriter was inserted after its execution and while in posses-sion of the insurer without the knowledge or approval of the insured. This is not a case where an effort is made to hold the insurer to an unauthorized contract made by a soliciting agent as discussed in Shaughnessy v. N. Y. Life Ins. Co. supra. But in a case of this character it is proper to show the facts to exonerate insured from misrepresentation. If the authorized agent of the company incor-rectly wrote this negative answer in the application and the insured was innocent thereof, then the misstatement was not that of the insured who had orally disclosed the truth but that of the insurer. The policy cannot be avoided on the theory that such statement is a material misrepresentation of the insured. Kausal v. Minn. F. M. F. Ins. Assn. 31 Minn. 17, 16 N. W. 430, 47 Am. Rep. 776; Wilson v. Minn. F. M. F. Ins. Assn. 36 Minn. 112, 30 N. W. 401, 1 Am. St. 659; Whitney v. Nat. M. A. Assn. 57 Minn. 472, 59 N. W. 943; Norman v. Kelso Farmers Mut. F. Ins. Co. 114 Minn. 49, 130 N. W. 13; Otte v. Hartford Life Ins. Co. 88 Minn. 423, 93 N. W. 608, 97 Am. St. 532; Zimmerman v. Bankers Casualty Co. 138 Minn. 442, 165 N. W. 271.

Affirmed.