## E. A. ROMAIN v. TWIN CITY FIRE INSURANCE COMPANY. SAME v. HARTFORD FIRE INSURANCE COMPANY OF HARTFORD.[1]

December 7, 1934.

Nos. 29,932, 29,933.

[1]Reported in 258 N. W. 289.

*Fowler, Carlson, Furber & Johnson* and *Ralph H. Comaford,* for appellants.

*Donohue, Quigley & Donohue,* for respondent.

DEVANEY, CHIEF JUSTICE.

Action on three fire insurance policies to recover the amount claimed to be due thereunder. Plaintiff, E. A. Romain, owned an ice-house at Big Lake, Minnesota. October 30, 1932, the building was totally destroyed by fire. Defendant Twin City Fire Insurance Company had covered the risk by a $1,000 policy. Defendant Hartford Fire Insurance Company had covered the risk by two policies, one for $500, the other for $1,000. These policies were standard "valued policies" and showed a stated insurable value of $12,000. At the time of the fire there was a total insurance on the building of $10,000.

Prior to the issuance of these policies, the partnership of Romain & Lagergren had owned the ice-house here involved. As owners they had entered into a contract with the Cedar Lake Ice & Fuel

Company of Minneapolis whereby they had agreed to sell no ice in the counties of Hennepin, Ramsey, or Washington in the state of Minnesota. They had further agreed that the ice-house would be wrecked, demolished, and destroyed prior to any sale by them of the land on which the ice-house was located and in any event within ten years. The contract was executed April 30, 1930. Romain & Lagergren subsequently sold the property to Ice Service Company, Inc. Ice Service Company, Inc. agreed to carry out the contract with the Cedar Lake Ice & Fuel Company and bought the property subject thereto. The Cedar Lake Ice & Fuel Company consented to this sale. After this sale the policies here sued upon were issued to the Ice Service Company, Inc. The Ice Service Company, Inc. did not disclose at any time to the insurance companies the existence of the contract with the Cedar Lake Ice & Fuel Company. While the property was owned by the Ice Service Company, Inc. plaintiff leased it from them. October 8, 1932, shortly before the fire, plaintiff purchased the property from Ice Service Company, Inc. for $1,000. He also agreed to assume and pay the last one-half of the 1931 taxes. The three policies of insurance were thereupon assigned to plaintiff. The two defendant insurance companies consented to these assignments. At the time of obtaining the consent of the two companies, plaintiff did not disclose that this contract existed with the Cedar Lake Ice & Fuel Company.

Defendant insurance companies contend that the existence of this contract with the Cedar Lake Ice & Fuel Company was a moral hazard which should have been disclosed to them at the time the policies were issued and at the time that the companies consented to an assignment of the policies to plaintiff; that since such was not disclosed the policies were avoided and hence that there is now no liability thereunder. Defendants also contend that the policies were avoided because, contrary to provisions therein, the ice-house was permitted to become vacant and was vacant at the time the fire occurred. Except as to the issue of vacancy, the case was submitted to a jury, who found for plaintiff. From a denial of their blended motions for judgment notwithstanding or for a new trial defendants appeal.

Three questions are presented:

(1) Did the failure to disclose to the insurance companies the existence of the contract with the Cedar Lake Ice & Fuel Company avoid the policies?

(2) Did the court err in refusing to submit to the jury the issue of whether the property was vacant at the time of the fire and in deciding as a matter of law that it was not?

(3) Did the trial court err in refusing to allow defendants to amend their answers at the trial and in excluding certain evidence hereinafter mentioned?

■ We are of the opinion that the questions whether this concealment was fraudulent or whether the fact concealed materially increased the risk properly were submitted to the jury. 1 Mason Minn. St. 1927, § 3370, provides:

"No oral or written misrepresentations made by assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

This provision is applicable to fire insurance contracts as well as to life and other insurance contracts. The trial court instructed the jury on the theory that this statute was applicable. We think this theory is correct. Though the statute is couched in such terms as to include only active misrepresentations, we perceive that it was intended to and does include passive misrepresentations, that is, concealment of known facts.

Under this statute, in order to avoid the policy, it is apparent that the matter concealed, in this case the contract with the Cedar Lake Ice & Fuel Company, either must have been concealed with an intent to deceive and defraud or else that the matter concealed must have increased the risk insured against. The jury was instructed that they could find either that the matter was fraudulently concealed or that it increased the risk. They found for plaintiff and so found that neither state of facts existed.

It is clear to us that the jury well could find that the concealment was not fraudulent. All the insurance was taken through one Murphy, an insurance broker in St. Cloud. The issuance of these particular policies to the Ice Service Company, Inc. was a renewal of previous insurance on the same ice-house. Plaintiff testified that at the time of this renewal and at the time that he obtained the companies' consent to the assignments it did not even occur to him to disclose the Cedar Lake contract and that he thought it was unnecessary to do so; in fact there is a lack of material and substantial evidence showing actual intent to defraud on the part of plaintiff or on the part of the Ice Service Company, Inc. The jury was completely justified in concluding that the contract with the Cedar Lake Ice & Fuel Company was not concealed with an intent to defraud.

Whether or not the existence of this contract materially increased the risk was a fair question for the jury. The jury was amply instructed in this regard and found for plaintiff, thereby indicating that in its opinion the existence of this contract was not material to the risk in that it did not increase the risk.

"Usually it is for a jury to decide whether a misrepresentation has in fact been made, whether it is material, whether it is made with intent to deceive and defraud or whether the matter misrepresented, in fact, increases the risk of loss." Mack v. Pacific Mut. L. Ins. Co. 167 Minn. 53, 57, 208 N. W. 410, 412.

Here it cannot be said that this contract, the existence of which was concealed, increased the risk of loss as a matter of law. As a matter of fact the existence of this contract did not increase the risk in the sense that gasolene or dynamite stored on the premises would. It created only a so-called moral hazard. This undisclosed contract perhaps no more increased the risk of loss than would a mortgage or other encumbrance upon the premises. Surely it was a fair question for the jury's determination as to whether the existence of this unrevealed contract increased the risk of loss so as to avoid the policy. The instructions were full and fair. The jury found for plaintiff. The finding must stand.

6

■ It was not error for the court to refuse to submit the issue of vacancy to the jury and to decide as a matter of law that the ice-house was not vacant at the time of the fire. The evidence conclusively showed that the ice-house was not then vacant but that there were 400 tons of ice stored therein. This was the remainder of an original 7,000 tons stored the previous year. Inasmuch as 400 tons of ice were stored in the ice-house at the time of the fire, which was the fall of the year, it must be held as a matter of law that the building was not vacant within the meaning of the provisions of the policies avoiding the insurance if the building became vacant. The term vacancy as used in these policies must be interpreted in the usual sense of that word as applied to ice-houses, not as applied to dwelling houses or other buildings.

■ (a) There was no error in the trial court's refusal to allow an amendment of the answers. Defendants sought during the trial to amend their answers so as to be able to allege as a defense that plaintiff had just purchased the ice-house for $1,000 and had agreed to pay the last one-half of the 1931 taxes. The allowance of an amendment is in the trial court's discretion, and its exercise of that discretion will not be reversed by this court in the absence of flagrant abuse. Here the matter sought to be incorporated into the answers was immaterial since the policies were "valued policies." The fact that Romain, plaintiff herein, purchased the ice-house for $1,000 after the insurance had been issued did not increase the risk but bore only on the question of the value of the property insured. It is settled that the value agreed to in the policy controls and that this figure cannot be contradicted when a loss occurs, in the absence of intentional fraud on the part of the insured. 1 Mason Minn. St. 1927, § 3516. Here the policies showed an insurable value of $12,000. The jury found that there was no intention to defraud in not disclosing the contract with the Cedar Lake Ice & Fuel Company and that this contract did not increase the risk. What happened subsequent to the time that the insurance was issued has no bearing on these two issues. Further, subsequent happenings cannot affect the insurable value stated in the policy. Hence the fact that plaintiff purchased the building for $1,000 was

immaterial, and the trial court properly exercised its discretion in denying the motion to amend.

(b) For the reasons just stated, evidence of the wreckage value of the ice-house was immaterial and properly excluded by the trial court. Since the jury found that the policy was not avoided at its inception by the concealment of the contract with the Cedar Lake Ice & Fuel Company, the value stated in the policy controls, and evidence of wreckage value is immaterial.

(c) There was no error in refusing to allow Murphy, the insurance broker through whom the insurance here in question was obtained, to testify that, had he known of the contract with the Cedar Lake Ice & Fuel Company, he would not have issued the policies. While undoubtedly Murphy is an expert witness qualified in insurance matters, yet his statement would represent a conclusion of ultimate fact, a fact which properly should be left for the jury's determination. As was said in Mack v. Pacific Mut. L. Ins. Co. 167 Minn. 53, 57, 208 N. W. 410, 412:

"The proper practice in the trial of the question as to whether the insurer would have issued the policy had it known the true facts, is to permit the witnesses to disclose the facts and the trier of fact will decide. In this case some of the witnesses were asked whether, if they had known the true facts, a policy would have been issued. Such question calls for an answer which is the ultimate question of fact to be determined by the jury. This practice is not commendable."

No further questions appear. The trial court's denial of defendants' motions for a new trial must be and are affirmed.

STONE, LORING, and JULIUS J. OLSON, JUSTICES (dissenting).

We are in accord with the views expressed in the majority opinion in paragraph numbered 1, in regard to the proper construction of 1 Mason Minn. St. 1927, § 3370, but cannot agree with the conclusion that there was a question for the jury as to materiality of the failure to disclose the Cedar Lake contract, nor as to the intent with which the information was withheld. As we see it, reason-

able men could not differ as to the conclusion that must necessarily be arrived at as to either proposition.

The best definition of a moral hazard which we find in the books is that contained in the opinion of Judge Sanborn in Connecticut F. Ins. Co. v. Manning (C. C. A.) 160 F. 382, 385, 15 Ann. Cas. 338, where that learned jurist said:

"Moral hazard is but another name for a pecuniary interest in the assured to permit the property to burn."

It appears from the evidence that just before the insurance policies were assigned to him, Romain had purchased the ice-house for $1,000 and that this was the best offer that the then owner could obtain. There was an outstanding contract with the Cedar Lake Ice & Fuel Company which required the building to be wrecked when the land upon which it was erected was sold, or in any event not later than 1940. Romain had agreed to carry out the terms of this agreement; in fact, he was one of the partnership of Romain & Lagergren which, as owners of the property, had originally made such agreement. They had sold to the Ice Service Company, Inc., with the consent of the Cedar Lake company, but no such consent appears to the sale to Romain, the deed evidencing which had not been recorded.

That the Cedar Lake contract materially affected the sale or the market value of the ice-house is quite obvious. Reasonable men could hardly differ upon that question. Romain certainly knew this from the fact that he was able to purchase for $1,000 an ice-house which, without the Cedar Lake contract, had an insurable value of $12,000 and which was actually insured for $10,000. His was the best offer its owner could obtain. It was therefore definitely in his pecuniary interest for the property to burn, and that fact constituted a material moral hazard, a much greater one than the mere existence of an encumbrance. As wisely said by Judge Sanborn in the case referred to [160 F. 385]:

"Statistics, experience, and observation all teach alike that the moral hazard is the least when the pecuniary interest of the assured in the protection of the property against fire is greatest, and

the moral hazard is greatest when the assured may gain the most by the burning of the property."

Judge Sanborn said further [160 F. 385]:

"The moral hazard is one of the main elements, if not the chief element, of an insurance risk, and it is never negligible. It is always material to the risk."

Nor do we think that reasonable minds functioning judicially could give credence to the plaintiff's statement that he did not think the Cedar Lake contract affected the value of the ice-house when he took an assignment of $10,000 of insurance on property which could not be sold for more than the $1,000 for which he had been able to buy it and that for that reason he refrained from mentioning the contract. Such a statement strains credulity past the breaking point. Reasonable minds versed in the ways of human nature could not differ as to the real reason for withholding this information. Obviously it was intentional and for the purpose of obtaining the transfer without reduction or cancellation of the insurance. His explanation of why he did not think the contract affected the value is wholly unsatisfactory and incredible. At any rate, the existence of the contract was material to the risk. The insured knew of it, and the insurer was entitled to know of it and then determine whether it affected the value or the risk. As said in Mutual L. Ins. Co. v. Hilton-Green, 241 U. S. 613, 622, 36 S. Ct. 676, 680, 60 L. ed. 1203, 1210:

"Considered in the most favorable light possible, the above quoted incorrect statements in the application are material representations; and, nothing else appearing, if known to be untrue by assured when made, invalidate the policy without further proof of actual conscious design to defraud."

The insured's mere statement that to him it did not affect the value does not relieve him of the consequences of intentionally concealing it.

"Beyond doubt an applicant for insurance should exercise toward the company the same good faith which may be rightly demanded

of it. The relationship demands fair dealing by both parties." Mutual L. Ins. Co. v. Hilton-Green, 241 U. S. 613, 624, 36 S. Ct. 676, 680, 60 L. ed. 1203, 1211.

On either ground we think the defendants should have judgment notwithstanding the verdict.