MARGARET L. SANNE, A MINOR, BY ALBERT A. DAHLKE, HER GUARDIAN, v. METROPOLITAN LIFE INSURANCE COMPANY.[1]

July 21, 1944.

No. 33,797.

[1]Reported in 15 N. W. (2d) 524.

*Snyder, Gale, Hoke, Richards & Janes,* for appellant.
*Reuben G. Thoreen,* for respondent.

JULIUS J. OLSON, JUSTICE.

Action to recover upon a policy of life insurance. Plaintiff had a verdict. Defendant's alternative motion for judgment or a new trial being denied, it appeals.

We observe that there is an error in the title of this action. Margaret L. Sanne, the daughter of the insured, is the real plaintiff since she is the named beneficiary. Being only 20 years of age when the action was tried below, she appeared by her guardian. The title of the action, therefore, should be "Margaret L. Sanne, by Albert A. Dahlke, as Guardian." The clerk will amend the title to conform to our decisions. Our latest is Rebne v. Rebne, 216 Minn. 379, 383, 13 N. W. (2d) 18, 20, where many of our prior cases are cited.

The insured, Mary E. Sanne, on October 15, 1942, signed an application for the policy, which was later issued, bearing the date of the application. On October 20, she appeared at the office of defendant's local medical examiner, Dr. J. W. Stuhr, of Stillwater, the medical examination having been arranged for by the company's soliciting agent, one Allan W. Meisner. The customary questions contained in the printed forms usually employed by insurance companies were asked and the answers thereto recorded by the doctor. He gave her a "very thorough physical examination," took her blood pressure, examined her urine, and found nothing wrong with her, "she appeared to be in good physical condition."

It is upon her answers to questions Nos. 18 and 23 that the defense is based. No. 18 reads:

"Have you ever had any of the following complaints or diseases?" (Then follows a list of some 28 "complaints or diseases," commencing with "apoplexy" and ending with "varicose veins." Included are diseases of "heart," "kidneys," "liver," "lungs," and "spinal disease.") "If yes, give particulars, dates and duration."

Her answer was: "Appendectomy—1924—Good results." Question No. 23 appears in this form:

"What clinics, hospitals, physicians, healers or other practitioners, if any, have you consulted or been treated by, within the past five years? If none, so state." (Answer) "None."

Defendant's position is thus stated in its brief:

"The defense is that in the application for the insurance the applicant made misrepresentations with intent to deceive and defraud or misrepresented matter which increased the risk of loss. (Minn. St. 1941, § 60.85 [Mason St. 1927, § 3370])."

In its answer, it offered judgment in the amount of the premium paid. It is apparent, therefore, that upon defendant rested the burden of proof, and that was the theory throughout the trial, defendant's counsel having been accorded the right to make the closing argument to the jury, a privilege fully used.

The record discloses that insured had consulted Dr. Demeter Kalinoff, a long-time practitioner at Stillwater, on April 8, August 15, and September 15, 1942, who, by the way, was her "usual medical attendant." She so answered question No. 17. Also consulted was Dr. Elwyn V. Strand on October 1 and 3 of that year.

In its memorandum the trial court observes that, since the record does not disclose that either of the doctors (Kalinoff or Strand) took any X rays and is silent as to the complaints she made to them or for what she was treated, there was room for the jury to find that the professional treatments received were not for any complaints indicating that she was suffering from any serious ailment

such as gallstones, cancer, or other internal disorders. Likely as not, what she consulted them about could well have been some trivial or temporary indisposition. Both doctors. were men of many years' experience. If she had been treated for ailments other than those of a trivial or temporary type, one would naturally assume that the doctors would have taken X rays or, by other equally effective professional means, would have sought and ascertained the facts and made an appropriate record thereof.

The evidence clearly discloses that insured was steadily employed as a cook at the Stillwater high school cafeteria, working at least 40 hours per week. She walked from her home and back again— a distance of eight or nine blocks each way over Stillwater's high hills—and took care of her household duties besides, until a week or ten days before undergoing an operation on December 2, when, having become ill, she was taken to the Stillwater hospital. She died April 20, 1943. In the circumstances related, we can readily go along with the trial judge in holding that defendant was not entitled to a directed verdict—that the issue was for the jury.

The court's charge met with no suggestion of change in form or substance by counsel for the parties, although the court asked if there was anything counsel might "wish to call attention to" before the jury retired.

Defendant's proof is found in the death certificate issued and signed by Dr. Strand. (He later died, so his testimony was not available.) Dr. Stuhr testified, in addition to what has already been related in respect to the application, that the cancerous condition which the death certificate showed to be present on December 2, 1942, probably had been "of at least six weeks' duration." But on cross-examination he freely admitted "that every one of these cancer cases are different"; often located in different parts of the human body; that there are "many different types and kinds of cancer—some of them come quickly and some take a long time to grow." His testimony came into the case after he had stated, "I couldn't form an opinion without having been at the—present at the operation." He had assisted in the operation and as such was

one of insured's physicians. For that reason, plaintiff's objection to the reception of what was there found was sustained, as was also his opinion based upon what he then observed. The quoted answer was in response to a hypothetical question based on the assumption that the entries and statements contained in the death certificate as to matters of opinion by the author thereof were true. Thus Dr. Stuhr's opinion was based upon the opinion of another. The facts upon which his opinion was founded are wholly absent.

Dr. Kalinoff's testimony lends no aid to defendant. This is shown by the final question put to him by defendant's counsel:

"Now, did you, when you saw Mrs. Sanne on April 8, 1942, and also on the other dates when you saw her in 1942, arrive at a diagnosis?

\*    \*    \*    \*    \*

"A.  No.  No."

We have recited the essential facts upon which the defense relies. Are these, in the language of defendant, of such "overwhelming preponderance" as to convert the question of misrepresentation from one of fact to one of law?

Minn. St. 1941, § 60.85 (Mason St. 1927, § 3370), provides:

"No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive or defraud, or unless the matter misrepresented increases the risk of loss."

The court instructed the jury:

"Under this statute a material misrepresentation made with intent to deceive and defraud voids the policy. A material misrepresentation, not made with intent to deceive or defraud, does not void the policy unless, by the misrepresentation the risk of loss is \* \* \* increased. If a material misrepresentation increases the risk of loss the policy is void regardless of the intent with which it is made, and an immaterial representation, though made with intent to deceive and defraud, does not avoid the policy."

The court properly placed the burden of proof upon defendant, saying:

"Now, if the defendant has failed to establish either one of those matters by a fair preponderance of the evidence, then the burden of proof has not been sustained by the defendant, and, if the burden of proof has not been sustained by the defendant, then the plaintiff is entitled to recover" the amount of the policy with interest.

Many cases under this section have come before this court for final adjudication. One of these is Laury v. Northwestern Mut. L. Ins. Co. 180 Minn. 205, 230 N. W. 648. That case was twice heard, so no one can doubt that the matters there involved were thoroughly considered by the court. We shall not repeat what was there stated with respect to the facts or the law applicable thereto, since both opinions are easily available. The opinion on reargument appears at 180 Minn. 215, 231 N. W. 824. There the verdict of the jury sustaining recovery was affirmed here. In an interesting and instructive article by Professor Prosser, in 28 Minn. L. Rev. pp. 141, *et seq.*, he comments upon this case and concludes that the result of affirmance here was one (p. 143) "of which no disinterested person is likely to complain." True, he criticizes our reasons for arriving at the conclusion. A careful reading of his article has proved helpful in solution of the present case. He calls attention (p. 144) to the long list of specific inquiries usually required by insurance companies "about particular diseases or symptoms, many of them more or less vague or general in character, which were once called, in the Supreme Court of the United States, 'big bags to put many diseases in.'" And (p. 145): "We are all, as Lord Mansfield said in an early case, 'born with the seeds of mortality in us,' and there is none who can say that he does not carry within his body today the cause of his ultimate death." At p. 146 he quotes as follows, the supporting authorities being cited in footnote 16:

"* * * A 'disease,' in life insurance applications, is taken to refer to 'a derangement of the vital functions sufficiently serious to impair the constitution and leave in its wake some organic or

chronic effect undermining the general health, as distinguished from mere temporary or trivial affections, which ordinarily pass away without permanent injury to the system.' "

We think the following principles are well established by our decisions:

■ A material misrepresentation in an application for insurance made with intent to deceive and defraud avoids the policy, and even though a misrepresentation is made without intent to deceive or defraud, if the risk of loss is increased thereby, the policy is avoided. Mack v. Pacific Mut. L. Ins. Co. 167 Minn. 53, 56, 57, 208 N. W. 410, 412, and cases cited.

■ General questions in an application for insurance concerning former ailments do not require the disclosure of ailments of a trivial, temporary, or unimportant nature, but only those of a serious, dangerous, or permanent character. Id. 167 Minn. 57, 208 N. W. 412, and cases cited.

■ Only when the evidence conclusively establishes misrepresentation within the spirit of the law is a question of law presented. Id. 167 Minn. 57, 208 N. W. 412, and cases cited.

■ We have not overlooked Harnischfeger Sales Corp. v. National L. Ins. Co. 195 Minn. 31, 33, 36, 261 N. W. 580, 581, 582, upon which defendant heavily relies. The facts in that case are so obviously different from those here appearing that no one can find a comparison between the two. There the insured "purposely concealed from the defendant" facts which were obviously of controlling importance to disclose if he were to treat his insurer fairly. As a matter of fact, the court there found the facts to be "conclusive of the presence of such wilful deceit." Here, the most that can be said for defendant is that there was a fact issue to go to the jury. On this record, even that is doubtful. If the jury had reached the opposite conclusion, that for which defendant has contended and still contends, it is doubtful that we could find substantial reasons upon which to affirm. This disposes of the issues of law presented on defendant's motion for judgment.

188

■ Only one error is assigned as ground for a new trial. As we have seen, the instructions of the court met with no objection or even suggestion for modification or clarification on the part of counsel. On this phase it is proper to call attention to the fact that during the trial defendant's counsel repeatedly stated in respect to questions asked its witnesses that "I think counsel for plaintiff have the legal right to make that objection if he wishes to do so," referring to the privilege existing under the statute between physician and patient. The court having ruled several times on this phase, which counsel had recognized as valid and acquiesced in, one would naturally expect that he would refrain from making any argument to the jury again raising any such question. Instead he argued that matter strenuously, saying:

"Does it inspire confidence in the man who holds a position of trust and responsibility, who will by suppression of the facts endeavor to obtain funds, which might not be obtainable were the truth known? Does it make you feel perhaps that if some day you should find yourself engaged in a controversy with Mr. Dahlke that he might be employing these same methods to obtain from you your funds, which, were the truth known, would obviously not be owing and payable. Does the duty of a guardian go that far? Is it any the less disrespectable to extract money by suppression of the truth than it is to extract money by stating a falsehood? Is the means employed in one case any less reprehensible than the other?"

The court instructed the jury that, as to privileged communications, certain evidence was not permitted or received. In explanation thereof, the court said the statute provides that, in certain circumstances, confidential relations between physicians and their patients could not be given in court except with the consent of the "interested party." The fact that counsel for plaintiff objected to introduction of that kind of evidence "should have no bearing as far as the decision of this lawsuit is concerned. That evidence was excluded by authority of law * * * and it was the duty of the guardian to look after the interests of his ward."

We think there is no room for criticism of this instruction. Plaintiff is a young lady now about 21 years of age. She was in court and appeared as a witness in her own behalf. The mere fact that the guardian represented her in the lawsuit cannot be said, as we view it, to deprive her of rights clearly given her under the statute. Minn. St. 1941, § 595.02(4), (Mason St. 1927, § 9814-4). Obviously, too, the guardian should not be criticized for doing, through his attorney, what plaintiff herself could have done had she been a few months older. No ground for new trial is shown.

The order is affirmed.

[1]Reported in 15 N. W. (2d) 515.