BOARD OF TRUSTEES OF FIRST CONGREGATIONAL CHURCH
OF AUSTIN AND ANOTHER v. CREAM CITY MUTUAL
INSURANCE COMPANY OF MILWAUKEE AND OTHERS.

96 N. W. (2d) 690.

May 22, 1959—No. 37,604.

348

*Bang, Nierengarten & Hoversten* and *Ralph H. Comaford,* for appellants.

*William J. Baudler* and *Philip Richardson,* for respondents.

MURPHY, JUSTICE.

This is an appeal from an order of the Mower County District Court which denied the defendants' motion for amended findings or alternatively for a new trial.

The facts in this case may be simply stated. The plaintiff church and its board of trustees seek to recover on six fire insurance policies issued by the defendant companies. Each of the six policies complies with the Minnesota standard fire policy form as set forth in M. S. A. 65.011, and each has appended to it an additional endorsement which is denoted a "UNIFORM STANDARD MINNESOTA CHURCH FORM." This additional endorsement contains a clause to the effect that:

"This policy continues in full force and effect during such times as the church is not actually in session and during such times as the church may

be closed for temporary periods, provided that, *if this form is attached to a fire policy and the building is abandoned for church purposes for an indefinite period without written permission hereon, then this policy shall be void."* (Italics supplied.)

The plaintiff church was completely destroyed by a fire of incendiary origin on April 9, 1956. Previous to this date, the church had been sold to the city of Austin on a contract which was to remain executory until June 1, 1956. The plaintiffs reserved the right to possession until that date. On the date of the fire the unpaid balance on the contract for deed was $75,000. The plaintiffs now seek to recover under the insurance policies the amount of the fire loss from the six defendants. Additional facts relevant to our decision will be discussed later in the opinion.

This appeal presents two principal questions: (1) Whether the defendant insurers have valid policy defenses to the action; and (2) whether the defendants are entitled to be subrogated to any rights which the plaintiffs might have against the city of Austin.

The insurance companies' first contention is that they are not liable because the church building was "abandoned for church purposes" within the meaning of the endorsement on the policies. On February 26, 1956, approximately 6 weeks before the fire, the members of the congregation removed their religious services from the building in question to a new church building. They never returned for services in the old building. Also, much of the furnishings of the old church, including the organ, pews, and sanctuary carpeting, had been removed by the time of the fire. Other facts which the defendants cite as evidence of "abandonment" include: The drinking fountain had been disconnected, lavatory fixtures and the tower bell removed, gas and telephone disconnected, and mail deliveries discontinued. Also, there were piles of discarded drawings on the floor in the Sunday-school room; broken chairs and split frames from blackboards were piled in the basement; and a number of wrappings and boxes were stacked in the former sanctuary. On the other hand, the church building had been the scene of some activity. The pastor, Sunday-school superintendent, and trustees had occasion to visit and make use of the building; a part of the religious and music libraries remained, and the pastor and music director occasionally made reference to these collections; light service was con-

tinued; and groups of parishioners had used the building for a rummage sale during 3 days in March and for packing missionary boxes.

■ We think the record supports the findings of the trial court that the church building had not been abandoned for church purposes. It has been stated many times that abandonment is the voluntary relinquishment, surrender, or disclaimer of a known property right, absolutely and without reference to any particular person or purpose. It involves two elements—act and intention—and without the concurrence of these there can be no abandonment. There must be an actual relinquishment of possession accompanied by an intent to part permanently with the property in the goods. State v. McCoy, 228 Minn. 420, 38 N. W. (2d) 386; Erickson v. Sinykin, 223 Minn. 232, 26 N. W. (2d) 172, 170 A. L. R. 697; 1 Am. Jur., Abandonment, § 2; 1 Dunnell, Dig. (3 ed.) § 1. Abandonment is an issue of fact and is determined by the trier of fact. State v. Northwestern Nat. Bank, 219 Minn. 471, 486, 18 N. W. (2d) 569, 577. Although religious services were no longer held in the building, there was still some activity, as related above. It is our view that, although the building was not being used for the purpose of conducting religious rites as such, the use of the property was nevertheless for "church purposes" as that term is used in the policies.

The phrase "abandoned for church purposes" is not defined in the policies, and under our accepted rules of construction we must resolve any reasonable doubt as to the meaning of language in an insurance policy in favor of the insured.[1] It cannot be denied that at and prior to the time of the fire the building was being made use of by the plaintiffs. If the insurance companies desired to limit the coverage to those periods during and between which the building was being used for performance of religious services, as distinguished from the broader term "church purposes," it would have been a simple matter for them to so provide by appropriate and definite language in their policies.[2]

---

[1]Allied Mutual Cas. Co. v. Askerud, 254 Minn. 156, 94 N. W. (2d) 534; 9 Dunnell, Dig. (3 ed.) § 4659(16).

[2]Because of our holding on this question, we need not decide any issues raised by the plaintiffs' second argument—that the abandonment clause is invalid in view of the language in M. S. A. 65.011, subd. 10, dealing with additional endorsements to the standard fire policy form.

■ The next question raised by the insurers relates to the claim that the policies must be avoided because of an increase in the hazard or risk of loss by reason of the removal from the building of the religious services and the various furnishings. Although the trial court made no findings on this question, he did discuss it in his memorandum, concluding that there was nothing in the usage of the building at the time of the fire which had increased the risk of loss. It is apparent from an examination of the pleadings and record that both parties treated the defenses of abandonment and increase in risk as the same thing. For example, the defendants pleaded that the increase in risk was due to the alleged abandonment of the church building. In light of these facts it is our view that there was no necessity for making an *express* finding with reference to the issue of increase in risk by reason of the usage of the church. Such a finding is implicit in the court's finding that the property was not abandoned for church purposes. Moreover, there is nothing in the record here which indicates circumstances giving rise to an increase in risk by reason of the presence of dangerous or inflammable materials on the premises such as fireworks and gasoline as dealt with in Betcher v. Capital Fire Ins. Co. 78 Minn. 240, 80 N. W. 971; Schaffer v. Hampton Farmers Mutual Fire Ins. Co. 183 Minn. 101, 235 N. W. 618, 236 N. W. 327; 29 Am. Jur., Insurance, §§ 677, 679; Annotation, 26 A. L. R. (2d) 809. Under the circumstances before us the diminution in use of the property is not sufficient to constitute an increase in risk.

We held in Nathan v. St. Paul Mutual Ins. Co. 243 Minn. 430, 68 N. W. (2d) 385, that what constitutes an increase of risk is a factual question for the finder of fact unless the increase is obvious, and we will not reverse such a finding unless it is manifestly contrary to the evidence. The trial court in the present case realistically pointed out that:

"* * * it should be borne in mind that an insurance contract upon a church edifice is somewhat of a special situation. Both parties knew and understood that the premises would be vacant much of the time as far as anybody being actually on the premises. This was true in a situation such as existed here on the date of the loss and not a greatly different situation than it had been when the church was being used for all religious purposes. It appears that the premises are located practically

in the downtown area of the City of Austin, easily to be observed by passers by, police officers, or anyone interested in the premises. There seems to be nothing in the manner of its use at the time of the loss that had increased the risk on the premises, and the situation as a whole was no different than it had been at all times during the existence of the insurance contract."

We think that the foregoing conclusions of the trial court dispose of the defendants' claim that the usage of the building increased the moral or physical hazard of fire.

■ Although at the time of the fire the plaintiffs had only 53 more days in which they had a right to occupy the church, they are still entitled to recover the full face value of the insurance policies in question.[3] It is generally accepted that in the case of a valued policy, such as we are here concerned with, the insured may recover the full value of his policy even though the value of his actual interest is less than the amount of the insurance. The insurer will not be allowed to go behind the policy to show that the insured's interest is less than the full amount of the policy.[4]

■ The most difficult question is raised by the insurance companies by their assertion that they are entitled to be subrogated to the church's claim, if any, against the city of Austin. At the time of the fire the property had been sold to the city of Austin under a contract upon which there was still owing to the church a principal balance of $75,000. The church still held the legal title to the property to secure this sum and to secure its reserved right of possession which was to expire on June 1,

---

[3]Harrington v. Agricultural Ins. Co. 179 Minn. 510, 229 N. W. 792, 68 A. L. R. 1340, is distinguishable. There we held that an insured was entitled to reimbursement only for the actual amount of his loss. That decision concerned an "open" insurance policy rather than a "valued" policy. The decision indicates that under the valued policy the insured may recover the full amount of the insurance, regardless of the value of his interest and the actual loss to him.

[4]See, 29 Am. Jur., Insurance, § 1196; National Fire Ins. Co. v. Board of Public Instruction (5 Cir.) 239 F. (2d) 370; Tedford v. Security State Fire Ins. Co. 224 Ark. 1047, 278 S. W. (2d) 89; Antell v. Pearl Assur. Co. Ltd. 252 Minn. 118, 89 N. W. (2d) 726; Nathan v. St. Paul Mutual Ins. Co. 243 Minn. 430, 68 N. W. (2d) 385.

1956 (53 days after the fire), and its reserved right to remove paneling and other property. The defendants argue that the church should not be permitted to recover twice for the same loss; that they should not have the proceeds of the insurance policies and also collect from the city of Austin the balance of $75,000 on the contract.

In discussing the merits of the defendants' contention on this point, it should be pointed out that it is the universally accepted rule that an insurer may be subrogated to the insured's rights against any person wrongfully causing a compensable loss to the insured.[5] However, there is no such agreement of authorities as to the right of the insurer to be subrogated to collateral contract rights which the insured has against a third person who did not cause the loss.[6]

In considering the asserted right of the insurer to subrogation to the collateral rights of the insured, certain conflicting considerations come into play. To permit the insured to keep the proceeds of both obligations offends public policy which frowns upon placing an insured in a position to profit by a loss which he may be tempted to cause himself or by carelessness fail to prevent. On the other hand, to give the insurer the benefit of the collateral obligation through subrogation ignores the plain terms of the insuring agreement and provides the insurer with a windfall. Its premiums are assumed to represent the fair equivalent of the obligation it contracted to incur without knowledge of the existence of collateral remedies.[7]

There are certain authorities which support the contention of the defendants.[8] This view is perhaps best expressed in Edlin v. Security Ins. Co. (S. D. Ill.) 160 F. Supp. 487. In that case the plaintiff had been compensated for the insured building by a condemnation award. The building was damaged by fire but the court denied plaintiff's

---

[5] 29 Am. Jur., Insurance, § 1335.

[6] See, Vance, Insurance (3 ed.) § 134.

[7] See, In re Future Mfg. Co-op. (N. D. Cal.) 165 F. Supp. 111; 28 Col. L. Rev. 202.

[8] See, Darrell v. Tibbitts [1879] 5 Q. B. D. 560; Castellain v. Preston [1883] 11 Q. B. D. 380; Ramsdell v. Insurance Co. of N. America, 197 Wis. 136, 221 N. W. 654; Beman v. Springfield F. & M. Ins. Co. 303 Ill. App. 554, 25 N. E. (2d) 603.

recovery on his insurance policy, saying (160 F. Supp. 489):

"It is the opinion of this Court * * * that a contract of fire insurance is a contract of indemnity against such loss or damage as the insured may sustain by reason of the destruction of the property described in the policy and that where no financial or pecuniary loss has been sustained by virtue of such destruction there can be no recovery."

Perhaps the leading American authority is Alexandra Restaurant, Inc. v. New Hampshire Ins. Co. 272 App. Div. 346, 71 N. Y. S. (2d) 515, affirmed, 297 N. Y. 858, 79 N. E. (2d) 268, 33 Minn. L. Rev. 82, which holds that an insurer's liability is not affected by favorable contract claims of the insured. In that case a fire damaged leased property which was insured by the lessee. The lessor restored the premises as required by the lease. Subsequently, the lessee sued its insurer to recover under the policy. It was held that the fact of the restoration by the lessor did not affect the insurer's liability because the insurer was not entitled to the benefit of the insured's wholly independent contract with its lessor. The court reasoned that the insurance contract was between the lessee and the insurer and it was not a contract of surety that the landlord would restore the premises. The contractual relation between the lessor and lessee was wholly independent of any relation with the insurance company. It is thus clear that under the Alexandra Restaurant case the rights of an insurer and an insured are established as of the time of the fire, and those rights are not affected if the insured eventually is compensated for the loss from another source. The recovery of an insured will not be diminished because of the fact that he might have collateral contracts with third persons which operate to relieve the insured from the loss for which the insurer agreed to compensate him.

In a similar case, Foster v. Equitable Mutual Fire Ins. Co. 68 Mass. (2 Gray) 216, 220, the Supreme Court of Massachusetts held that the recovery of a mortgagee from his insurer was not to be affected by the repair of the property by the mortgagor. The court said:

"* * * The plaintiffs had an insurable interest in the property; the defendants agreed to insure it against a loss by fire; and a loss has occurred. The contingency contemplated by the contract has therefore

arisen, and the defendants are bound to pay the amount of the damage. It is wholly immaterial to them, and constitutes no valid defence to this suit, that the property has been since repaired."[9]

The most persuasive authority to this court is our own prior holding in Kahn v. American Ins. Co. 137 Minn. 16, 162 N. W. 685.[10] In that case it was clearly held that in an action upon an insurance policy insuring the lessee against loss to his leasehold the contract relation between the lessor and lessee and a settlement of their differences arising from a fire to the leased premises are matters in which the insurer has no concern. This court said (137 Minn. 19, 162 N. W. 686):

"* * * In case the defendants are compelled to pay the policies, it may be that the plaintiffs will realize more than the value of the leasehold; however this may be, they had a valuable insurable interest in the leasehold; *the defendants undertook to insure the same against loss and have no right to resort to the settlement between the lessees and the lessor to escape liability on the policies.* There being no exemption in the policies, the insurers' liability to the amounts specified in the policies attaches immediately upon the occurrence of the loss, and the loss occurs, in this case, upon the legal termination of the lease. Foley v. Manufacturer's & B. F. Ins. Co. 152 N. Y. 131, 46 N. E. 318, 43 L. R. A. 664, and cases cited therein." (Italics supplied.)

The Foley case, which this court cited as support for its holding in the Kahn decision, was also cited by the New York court in support of its holding in the Alexandra Restaurant case.

It is our view that the Alexandra Restaurant and Kahn cases not only represent the better reasoning on the subject but also are in harmony with the public policy as expressed by the legislature in the enactment of the valued policy statute, § 65.05. Under this statute we

[9]See, also, Citizens Ins. Co. v. Foxbilt, Inc. (8 Cir.) 226 F. (2d) 641, 53 A. L. R. (2d) 1376; Pink v. Smith, 281 Mich. 107, 274 N. W. 727; Dubin Paper Co. v. Insurance Co. of N. America, 361 Pa. 68, 63 A. (2d) 85, 8 A. L. R. (2d) 1393; 3 Richards, Insurance (5 ed.) § 562.

[10]See Midland Loan Finance Co. v. Security Ins. Co. 208 Minn. 251, 293 N. W. 313, and cases cited, where this court approves by way of dicta cases similar to Alexandra Restaurant, Inc. v. New Hampshire Ins. Co. *supra.*

have, in the Antell case and in Romain v. Twin City Fire Ins. Co. 193 Minn. 1, 258 N. W. 289, sustained recoveries far in excess of the value of the insured's property. We accordingly hold that the defendant insurers are not entitled to be subrogated to any rights which the plaintiffs might have against the city of Austin.

We refrain from expressing any views as to the respective rights of the church and the city of Austin resulting from the destruction of the property covered by the contract. That issue is not before us.

Affirmed.