## BROOKS UPHOLSTERING COMPANY, INC. v. AETNA INSURANCE COMPANY AND OTHERS.

149 N. W. (2d) 502.

March 23, 1967—No. 40,357.

*Robins, Davis & Lyons, Solly Robins,* and *Harding A. Orren,* for appellant.

*Dorsey, Owen, Marquart, Windhorst & West, Henry Halladay,* and *Curtis D. Forslund,* for respondents.

KNUTSON, CHIEF JUSTICE.

This is a companion case to Brooks Realty, Inc. v. Aetna Ins. Co. 276 Minn. 245, 149 N. W. (2d) 494, which is filed as of this day.

Plaintiff here appeals from an order denying its motion for judgment notwithstanding a special verdict or for a new trial and from the judgment.

It is needless to repeat the facts stated in the Realty case except in so far as it is necessary in order to understand the issues involved in this appeal.

This case was tried after the Realty case and after Charles Rottach had recanted his testimony in the Realty trial and admitted that he committed perjury therein. In answer to special interrogatories, the jury in the instant case found that plaintiff did not actually set the fire which destroyed the building but that it did intentionally increase the risk of loss by fire. It must be assumed from the latter answer that the jury found that Upholstering had knowledge that the sprinkler system had been turned off and intentionally left it off. The post-trial motions for judgment notwithstanding the special verdict or for a new trial on the sole issue of whether there was an increase of risk of loss by fire or on all issues were denied, and this appeal followed.

In this case Rottach testified substantially as he had stated after the trial in the Realty case, that he had told his supervisor, Don Johnson, on the day that he had damaged the sprinkler head that he had shut off the system and that he had also told Edward Brooks that he had the accident and had shut off the system; that Edward Brooks had said, "Leave it go. * * * We'll get it fixed later. The building has been here fifty years, it'll be here another fifty years." He further testified

that Brooks had asked him to set "a small fire for me" and that he had had other conversations with him that led him to believe that the fire was intentionally started. We must assume that the jury disbelieved part of Rottach's testimony in finding that plaintiff did not intentionally start the fire, but that it believed part of it in finding plaintiff intentionally increased the risk of loss. It is difficult to reconcile these two findings with Rottach's testimony and certainly more difficult to reconcile the finding of the jury in this case with that in the Realty case unless it is on the grounds that the jury accepted part of Rottach's testimony.

However, the main difficulty with the case involves the confusion which seemed to exist after the case was submitted to the jury. The jury returned for additional instructions and asked two questions, one being, "If managing agent has knowledge of sprinkling system being out of order. After issuing orders to maintenance man to take care of it, can this be construed intentional?" and the second being, "Can negligent [sic] be considered intentional?" The court instructed the jury on the second question that "carelessness or negligence, regardless of degree, does not bar a recovery under the policies," but refused to give additional instructions on the first question, saying:

"* * * On this point it is my present views that I will tell the jury, number one, who is a managing agent is what they have to decide and whether a managing agent, after issuing orders to a maintenance man to take care of it, whether or not that can be construed as intentional, I can't help them on, because that's something that they have got to decide. I can't decide it for them with a legal statement ahead of time. It's one of the issues that's been submitted to them."

He later told the jury:

"* * * I can't give you any further law on that. In other words, that's one of the questions that's arisen in your minds that you will have to decide. In other words, you will have to decide whether if, as you say, a managing agent says to someone else, 'You take care of it, you take care of it,' you'll have to decide whether that's enough or

whether it isn't enough. That's a decision that the twelve of you will have to make without any further law from me."

How the jury could understand what it was to do in light of these instructions it is difficult to see. The judge should have instructed the jury on the law of whether knowledge of a managing agent was imputable to the company or not, and not have left it to the jury to conjecture on this, the main issue in the case. The court was undoubtedly right in holding that negligence did not bar recovery on the grounds that the company had intentionally increased risk of loss.

It would seem that if the jury believed Rottach's testimony at all it might have concluded that Edward Brooks had actual knowledge that the sprinkler system had been turned off and intentionally left it off and thereby increased the risk of loss from fire. It is the claim of plaintiff that before this could defeat recovery under these policies the shutdown of the sprinkler system must have been permanent. We are not persuaded by this argument because, if it was shut down until the fire occurred, it could hardly be more permanent, even if it was only a matter of a few days. For the general rule on this contention, see 29A Am. Jur., Insurance, § 888. The intention to leave the system inoperative must be more or less permanent, but if that intent appears, the time that elapses until a fire occurs is immaterial.

We have considered various hazards in prior cases that have been held to increase risk of loss or the contrary, and while we have no case involving the shutdown of a sprinkler system, a brief review of some of the cases might be of help. In Romain v. Twin City Fire Ins. Co. 193 Minn. 1, 258 N. W. 289, plaintiff bought an icehouse for $1,000 and had it insured for $10,000 at the time of the fire. There was an agreement that the building would be wrecked prior to any sale of the land or, in any event, within 10 years. After destruction of the building by fire, it was contended that the existence of such agreement constituted a moral hazard as a matter of law and defendants requested that the court set aside the jury verdict for plaintiff. By a divided court we held, quoting from Mack v. Pacific Mutual Life Ins. Co. 167 Minn. 53, 57, 208 N. W. 410, 412:

"* * * Usually it is for a jury to decide whether a misrepresentation has in fact been made, whether it is material, whether it is made with intent to deceive and defraud or whether the matter misrepresented, in fact, increases the risk of loss."

While this involved a moral hazard, according to the minority opinion, in applying for and procuring the insurance, much the same rule applies to increase of hazard after insurance is obtained.

In Betcher v. Capital Fire Ins. Co. 78 Minn. 240, 242, 80 N. W. 971, 972, we upheld a directed verdict for the insurer where it appeared that a large quantity of fireworks had been stored on the insured premises, stating:

"* * * Even if there was no direct evidence on the question, we would take judicial notice of the fact that the storage of such articles caused an increase of the risk."

Similarly, in Schaffer v. Hampton Farmers Mutual Fire Ins. Co. 183 Minn. 101, 235 N. W. 618, 236 N. W. 327, we held that a tenant's operation of a still in one of plaintiff's barns had increased the hazard so as to invalidate his insurance. We granted a new trial rather than judgment for defendant because the lower court had not submitted to the jury the issue of whether plaintiff had knowledge that the tenant was operating a still.

In Taylor v. Security Mutual Fire Ins. Co. 88 Minn. 231, 92 N. W. 952, we held the burden is on the insurer to prove violation of a provision against increasing the risk of loss, and that what constitutes an increase of risk usually is a fact question for the jury's determination. Similar holdings are to be found in Nathan v. St. Paul Mutual Ins. Co. 243 Minn. 430, 68 N. W. (2d) 385, and Board of First Congregational Church v. Cream City Mutual Ins. Co. 255 Minn. 347, 96 N. W. (2d) 690, where a church was destroyed by a fire of incendiary origin.

For annotations on the questions involved, see 26 A. L. R. (2d) 809, concerning the increase of risk of loss by the property owner's actions, such as bringing inflammable substances onto the property, and 34 A. L. R. (2d) 717, concerning the effect of accidentally created conditions which increase the risk of loss. There are foreign cases

that could be discussed but we see no need of doing so here, as they are to be found in the annotations.

Thus it follows that it is ordinarily for the jury to determine whether the action of the insured has increased the risk of loss so as to vitiate an insurance policy. Had it not been for the apparent confusion of the jury, shown by the record, in this case we would be inclined to let the verdict stand, but inasmuch as the verdict with respect to increase of risk is the exact opposite of what was found in the Realty case and we conclude that that case must be tried over, we think that this case, too, should be submitted to a jury without such confusion as to whether knowledge of the agent would be sufficient to vitiate the policy. Here again, as we said in Realty, if the officer or agent was one who was acting within the scope of his duties, his knowledge is imputable to the corporation. Certainly if the jury believed that Edward Brooks had knowledge that the sprinkler system had been shut down and intentionally left it off, an inference would be permissible that he had increased the risk of loss. As a matter of fact, it would almost follow as a matter of law that that were true.

Plaintiff argues that Minn. St. 65.011, subd. 11, which provides:

"It may print or use on its policy, printed forms covering the maintenance or supervision of watchman's service, automatic sprinkler service or the maintenance of a clear space in lumber yards, when approved by the commissioner of insurance, but no such clause shall contain any provision calling for the lapse or the suspension of the insurance coverage,"

precludes any claim on the part of the insurer that the risk of loss has been increased by the failure of the sprinkler system.

We are not persuaded by this argument. Obviously the statute is aimed at a situation where the sprinkler system is out of order as the result of accident, or even negligent failure to repair it, but it can hardly be thought that the legislature would provide a statute which would permit the insured to recover if he intentionally shuts off a sprinkler system that is intended to protect the building from fire and does noth-

ing about it. To so read this provision would nullify the provision of our statutory standard policy, § 65.011, subd. 2, reading:

"Unless otherwise provided in writing added hereto this company shall not be liable for loss occurring:

"(a) while the hazard is increased by any means within the control or knowledge of the insured."

Increase of the hazard is a defense to a claim under the policy. The provision relied on by plaintiff prohibits the inclusion in the policy of a suspension or forfeiture clause if a sprinkler requirement is included. At first blush the two provisions seem inconsistent but they need not be so construed. Whether intentional failure to repair a sprinkler system increased the hazard is a fact issue for the jury.

Plaintiff also contends that the court erred in using the term "increase of risk of loss" rather than "increase of hazard." We are convinced the two expressions are synonymous.

We have considered other errors assigned but see no need of discussing them.

A new trial will be granted.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.